**In re Norman SILVERSTEIN, Debtor.**

**Arnold MINSKY, Plaintiff,**

v.

**Norman SILVERSTEIN, Defendant.**

**Bankruptcy No. 890-81299-478.**
**Adv. No. 890-8264-478.**

United States Bankruptcy Court,
E.D. New York.

March 17, 1993.

Abel Jack Schwartz, Garden City, NY, for debtor.

Rosen & Barnard by R. Kenneth Barnard, Huntington, NY, for plaintiff.

### DECISION ON DISCHARGEABILITY
### 11 U.S.C. § 727(a)(2)(A) and 727(a)(4)(A)

DOROTHY EISENBERG, Bankruptcy Judge.

The plaintiff, ARNOLD MINSKY ("Plaintiff"), brought this adversary proceeding to object to the discharge of NORMAN SILVERSTEIN, ("Debtor") pursuant to 11 U.S.C. sections 727, as well as to seek a determination of non-dischargeability pursuant to section 523(a)(2). The complaint contained five (5) causes of action. The fourth cause of action—claiming concealment of the value of debtor's post-petition business allegedly appropriated from his pre-petition business interest in violation of Section 727(a)(2)—and the fifth cause of action—alleging the Debtor made misrepresentations to the plaintiff in violation of Section 523(a)(2) in order to induce plaintiff's business investments—were dismissed for failure to establish a prima facie case after plaintiff's presentation of evidence.

Plaintiff's allegations as to Debtor's failure to disclose the use of an alias in his schedules does not rise to the level of warranting a bar to discharge and is dismissed.

The remaining three causes of action pursuant to 11 U.S.C. Section 727, as discussed in this opinion, relate to the Debtor's transfer of his one-half interest in his house to his wife fourteen months prior to the filing of his Chapter 7 Petition.

For the reasons set forth below, this Court finds for the Plaintiff and the Debtor's discharge will be denied.

### FACTS

1. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 16, 1990. Plaintiff is listed

as a creditor of the Debtor on schedules filed by the Debtor.

2. Debtor and his wife purchased, owned, and maintained their home (the "property") until Debtor conveyed his one-half (½) interest to his wife on March 17, 1989 for no financial consideration. The deed from the Debtor and his wife to the wife was prepared and executed in or about December, 1988, but was not recorded until March, 1989, fourteen months prior to the filing of the Petition. This was the same period of time that Debtor was negotiating to sell a one-half interest in his business to Plaintiff. Plaintiff and the Debtor had known each other for approximately ten years and had visited and socialized together with their spouses.

3. At the time of the conveyance, the property's value exceeded the obligation of two secured mortgages, executed by the Debtor and his wife, by at least $85,000.00.[1]

4. Debtor and his wife have continuously paid the mortgages, taxes and maintenance on the property both before and after the conveyance, from their joint checking account. Debtor and his wife have filed joint tax returns which list interest deductions for the property's mortgages both before and after the conveyance.

5. Debtor has used the real property continuously as his residence both before and after the conveyance. During the period from December 1988 through April 1990, however, he occasionally stayed at his son's house. At no time did Debtor permanently move out of the house. Even though he claimed to have left his wife and home in contemplation of divorce, he admitted to spending at least one or two nights per week at his home during the time of his marital problems with his wife and that he never removed his personal belongings. No rent has been paid for post-conveyance use of the property.

6. Debtor did not list any interest in the property on his schedules, nor did he list his obligations for two mortgages on the property. Although Debtor claims to have advised the trustee of the transfer of his interest in the house to his spouse at a Section 341 meeting conducted on July 20, 1990, an amendment to the schedules to reflect these facts was filed on October 3, 1990, after the commencement of this adversary proceeding.

7. Prior to March 1, 1989, the Debtor was the sole shareholder of N & S Appliance Corp. From approximately December, 1988 to March 1, 1989, he had been negotiating with Plaintiff for the sale of fifty percent of his stock.

8. At the time of the conveyance, Debtor's non-business assets were sufficient to pay all his personal debts. However, in addition to his personal non-business debts, he had personally guaranteed several business obligations, which exceeded all his assets by approximately $30,000.00 and he was therefore insolvent.

9. Debtor owned 100% of N & S Corp. prior to his sale of 50% of the stock to Plaintiff on March 1, 1989 for the sum of $60,000. N & S Corp.'s 1988 tax return indicated a negative equity of $31,877 on December 31, 1988, and it was therefore insolvent; other evidence showed the negative value to be much greater when estimating the assets at liquidation value (R. at 368–369). The stock sale agreement included a provision that funds from the sale would go towards paying $37,000 of the corporation's New York State sales tax debt, which were taxes for which the Debtor was personally liable. By the end of March, 1989, the sales tax debt was $84,806.

10. After Plaintiff purchased fifty percent of the stock of N & S from Debtor, he guaranteed certain debts of the corporation and has paid the creditors for those corporate obligations as guarantor.

---

1. Each party had an appraiser testify as to the property's value. Plaintiff's expert testified to a value of $213,000 (R. at 5). Defendant's expert testified to a value of $180,000.00. (R. at 260). Also,, differing testimony was given as to the current mortgage values. (R. at 102, 46). The potential range in equity value is not relevant to a disposition in this case since there clearly was equity in the property.

11. Although the Plaintiff claims the Debtor made certain representations as to the value of the business which were false and upon which he relied, the records show that after Plaintiff's accountant had returned the Debtor's books and record, Plaintiff invested his money in Debtor's business by purchasing fifty percent of the stock, in spite of the fact that his accountant had advised him not to make this investment. It is clear that Plaintiff relied on his own evaluation in spite of his own professional advisor. There is no evidence of Debtor's fraud or of Plaintiff's reliance thereon in regard to his purchase of an interest if the Debtor's business.

12. Debtor had used an alias, Norman Sills, in all his business dealings with retail business customers, yet failed to disclose this fact on his petition. However, his legal name was always used with all his creditors, and no creditor relied on his assumed name.

13. The business lasted only to May, 1990, when it ceased operating and the Debtor filed this individual Chapter 7 case.

The only issue that must be decided in this case is whether the Debtor concealed assets, and or intended to defraud creditors. If there is concealment, the issue of Debtor's solvency is not pertinent. This Court finds that the preponderance of the evidence indicates concealment of an interest in real property and an intent to defraud creditors.

### DISCUSSION

Since *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the trend has been to use the preponderance of the evidence standard as the appropriate burden of proof in all 727(a) actions. *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279 (Bankr.S.D.N.Y.1992); *Hubbell Steel Corp. v. Cook (In re Cook)*, 126 B.R. 261, 266 (Bankr.E.D.Tex.1991). This Court adopts this standard.

### A. *Section 727(a)(2)(A)*

11 U.S.C. section 727(a)(2)(A) states that "[t]he court shall grant the debtor a discharge, unless ... the debtor, with intent to hinder, delay, or defraud a creditor ..., has transferred ..., or concealed, or has permitted to be transferred ..., or concealed ... property of the debtor, within one year before the date of the filing of the petition." In order to sustain an objection to discharge under 727(a)(2), the plaintiff must prove:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(3) that the act was that of the Debtor or his duly authorized agent;

(4) that the act consisted of transferring, removing, destroying or concealing any of the Debtor's property, or permitting any of these acts to be done. 4 *Collier on Bankruptcy*, Sec. 727.02 at 727–11–12 (15th Ed. 1988).

Ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the Debtor is the only person able to testify directly regarding his intent and a debtor is unlikely to state that his intent was fraudulent. *Job v. Calder (In re Calder)*, 907 F.2d 953 (10th Cir. 1990). Therefore, fraudulent intent is rarely susceptible to direct proof, but may be deduced from the facts and circumstances of a case. *In re Saphire*, 139 F.2d 34, 35 (2d Cir.1943); *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985). To infer actual intent to defraud, the Second Circuit has looked for "badges of fraud" such as:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transaction or course of conduct after the incurring

of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2nd Cir.1983). "The fact that property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under 727(a)(2). 4 *Collier on Bankruptcy*, Sec. 727.02 at 727–16 (15th Ed.1988).

"Concealment has generally been defined as the transfer of legal title to property to a third party with the retention of a secret interest by the Bankrupt. In effect, this would be creating a trust in the Bankrupt." *Ohio Citizens Trust Co. v. Smith (In re Smith)*, 11 B.R. 20, 22 (Bankr.N.D.Ohio 1981); *see also In re Vecchione* 407 F.Supp. 609 (E.D.N.Y.1976). Therefore, record title is not determinative of equitable ownership. *In re Berman* 100 B.R. 640 (Bankr.E.D.N.Y.1989) (where equitable ownership in the Debtor was determined to exist after the Debtor transferred his interest in his home to his wife but continued to use the residence). When a debtor makes all mortgage, insurance, and maintenance payments on and lives in property owned by another, he may be found to have fraudulently concealed his interest by maintaining the property in the other's name. *In re Martin* 698 F.2d 883 (7th Cir.1983).

██ Although the transfer of Debtor's interest in his house was legally affected in March, 1989, fourteen months prior to the filing of the Petition, many courts have applied 727(a)(2) in cases where a transfer of assets has occurred prior to one year before the petition filing date. *See, e.g.*, *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554–555 (5th Cir.1987); *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981).

Despite [the] seemingly absolute limitation on the timing of debtor's conduct, existing case law recognizes that a transfer, which occurred more than one year prior to the petition, may warrant the denial of a discharge if the transfer is concealed or beneficial interests are retained into the magic one year period. *In re Penner*, 107 B.R. 171, 173 (Bankr. N.D.Ind.1989). The doctrine of continuing concealment appropriately recognizes that concealment or retention of an equitable interest in property by the Debtor with the intent to defraud creditors may occur within the year before filing the petition even though the property was transferred prior to the one year time frame. *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 555 (5th Cir.1987). This Court adopts this reasoning as it is applicable to the case at bar.

In the instant case, Debtor's business, N & S Corp., was insolvent and experiencing sufficient cash flow problems so that its New York State sales tax indebtedness was not being paid timely. (Defendant's exhibit 6, R. at 377). Debtor attempted to alleviate the problem by the sale of fifty percent of the stock to Minksy, the negotiation for which occurred between December 1988 and the closing date of March 1, 1989. The stock sale agreement included a clause to pay $37,000 in sales tax arrearages. (Plaintiff's exhibits B and C, Defendant's exhibit 3). The infusion of cash appears to have been inadequate to relieve the cash flow predicament, evidenced by Debtor's election to pay the New York State sales tax debt over time instead of in a lump sum. (R. at 36).

In December of 1988, Debtor had a deed drafted to provide for a transfer of Debtor's interest in his home, his major asset, to his wife. (Plaintiff's exhibit A). Debtor claims that he and his wife were experiencing marital difficulties from December, 1988 to June, 1989 and that the transfer was in anticipation of divorce. However, he and his wife had never entered into a separation agreement, had never discussed the basis of the transfer with the attorney who prepared the deed, and had never spoken to a divorce lawyer. (R. at 166–168). He claims that he had moved out of the house in December 1988 and returned shortly after the transfer of the asset to his wife, following a "reconciliation." Yet, during this period, he never moved his be-

longings out of the house, he continued to reside at the house one or two days a week, and could be reached there by phone on more than one occasion after ten o'clock at night. By his own admission he never permanently moved out of the house. (R. at 162–164). Furthermore, he has never ceased to pay the mortgage, taxes, and maintenance on the property from a joint account to which he made deposits and he filed joint tax returns with his wife showing interest deductions from the home's mortgages for both 1988 and 1989. (R. at 141–142, Plaintiff's exhibit F and G).

Debtor's professed basis for transferring the property is not credible. The evidence provided to substantiate Debtor's alleged purpose for the conveyance was the Debtor's own testimony, and that of his spouse. It appears to this Court that Debtor transferred the house, not in anticipation of divorce, but in anticipation of potential financial ruin from his personal obligations on loans of N & S Corp., a company which was precariously behind on its payables. The reason for the transfer was to remove his major asset from the reach of his creditors while retaining all the benefits of ownership during a period where he believed the financial condition of his business might deteriorate further. In fact, Debtor had suggested to Plaintiff that, likewise, Plaintiff should transfer his one-half interest in his home to his wife. (R. at 47). The practice of retaining a concealed equitable interest in the property continued throughout the one year period prior to his petition filing and until the filing of this adversary proceeding. Therefore, the court finds Debtor in violation of Section 727(a)(2)(A) on the basis of this concealment.

### B. Section 727(a)(4)(A)

■ Section 727(a)(4)(A) states that "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. Section 727(a)(4)(A) (1988). To prevail under Section 727(a)(4)(A), the objecting creditor must show that the false statement was made regarding a material matter relating to the Debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property. *Walters v. Sawyer (In re Sawyer)* 130 B.R. 384 (Bankr.E.D.N.Y.1991); *In re Montgomery*, 86 B.R. 948, 956 (Bankr.N.D.Ind. 1988); *In re Sapru*, 123 B.R. 948, 957 (Bankr.E.D.N.Y 1990). "The requisite intent being present, failure to list property which has been fraudulently conveyed may constitute a false oath." 4 *Collier on Bankruptcy*, Section 727.04 at 727–60–61.

■ In the instant case, the Debtor omitted listing on his Statement of Financial Affairs both the property as an asset and the liability of the two mortgages to which he was still obligated. Nor did the Debtor ever notify the mortgagees of the conveyance. (R. at 164). He claimed he was aware of his continuing obligation on the mortgages following the conveyance, yet neglected to list them because he did not wish to be discharged from these specific debts. Again, it appears to this Court that the intent of this false oath was to further his plan to conceal an equitable interest in his home. Even if the Debtor believed he properly omitted listing the house as an asset, considering his conveyance to his wife, his neglect to indicate the obligation of the first and second mortgages further demonstrates his intent to conceal this major asset to avoid scrutiny of the property arrangement fabricated between himself and his wife. Only after the commencement of this adversary proceeding was the filing amended to indicate the two mortgage obligations. (Plaintiff's exhibit I). Therefore, the Debtor is found also to have violated Section 727(a)(4)(A).

Assuming, arguendo, that Debtor was experiencing some marital problems as he claims, having heard and determined the facts in this case, this Court believes the transfer to have been made primarily to place the property out of the reach of creditors in violation of Section 727(a)(2). Transferring property with the intent to hinder, delay, or defraud creditors for the purported purpose of saving his marriage or for the benefit of his wife to protect her from the effects of his failing financial

obligations and concealing his interest therein, is not only a fraudulent conveyance under Section 548 of the Bankruptcy Code, but is grounds for the barring of Debtor's discharge.

As to Plaintiff's claim that the Debtor omitted listing an alias, Norman Sills, which he used in the course of his business in his Statement of Affairs, this Court finds that such omission, if made, would not be material so as to warrant the barring of Debtor's discharge. Unlike the intentional concealment of his house, this is not a material matter in this case. The Debtor limited his use of this alias to retail customers with which he had business contact. (R. at 194). All listed creditors knew Debtor by his legal name and no evidence was presented to suggest there might be any other creditors that would only know the Debtor by his alias.

C. *Section 727(a)(5)*

Section 727(a)(5) permits an objection to discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. Section 727(a)(5) (1988). First, the plaintiff has the burden to introduce some evidence of the disappearance of substantial assets or of unusual transactions. If satisfied, the burden then shifts to the defendant; the debtor must satisfactorily explain the loss or deficiency of assets. 4 *Collier on Bankruptcy*, 727.08, 727–72 (15th Edition, 1989). Section 727(a)(5) does not require that the explanation be meritorious. *Great American Insurance Company v. Nye (In re Nye)*, 64 B.R. 759, 762 (Bankr.E.D.N.C.1986). "The court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper." *Id* at 762. A satisfactory explanation must convince the bankruptcy judge. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984). The standard is one of reasonableness and credibility. *Federal Deposit Insurance Co. v. Hendren (In re Hendren)*, 51 B.R. 781, 788 (Bankr. E.D.Tenn.1985).

This is not a case of the disappearance of assets with no satisfactory explanation. The proper question the court must ask under Section 727(a)(5) is *what* happened to the assets, not *why* it happened. Although this Court has found Debtor in violation of Section 727(a)(2) and Section (a)(4) because he transferred title to his home, a substantial asset, he has explained satisfactorily the whereabouts of this and other business assets. Therefore the facts of this case do not properly fall under section 727(a)(5).

## CONCLUSION

1. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. Sections 1334 and 157. This matter is a core proceeding in accordance with 28 U.S.C. Section 157(b)(2)(J).

2. The plaintiff has met the burden of proof for objecting to discharge. The Debtor violated section 727(a)(2)(A) of the Bankruptcy Code by concealing a retained equitable interest in property within one year of the filing of the Petition.

4. The Debtor violated section 727(a)(4)(A) of the Bankruptcy Code by knowingly and fraudulently making false oaths that are materially related to the bankruptcy case.

5. The Debtor has satisfactorily explained the loss of assets under section 727(a)(5).

6. The Debtor's discharge is denied.

Settle Order in conformity with this decision.