In re Adrienne HALPERIN, Debtor.

The NATE B. AND FRANCIS SPINGOLD FOUNDATION, INC. and The Attorney General of the State of New York, Plaintiffs,

v.

Adrienne HALPERIN, Defendant.

Bankruptcy No. 192–18446–260.
Adversary No. 193–1336–260.

United States Bankruptcy Court,
E.D. New York.

Nov. 3, 1997.

Owen & Davis by R. Scott Greathead; Attorney General, State of New York by Paula Gellman, New York City, for Plaintiffs.

Reisman, Peirez, Reisman & Calica, L.L.P. by Jerome Reisman, Garden City, NY, for Defendant/Debtor.

## DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

CONRAD B. DUBERSTEIN, Chief Judge.

The instant adversary proceeding was filed by the Attorney General of the State of New York and the Nate B. and Francis Spingold Foundation (referred to collectively as "Plaintiffs") on July 19, 1993. The Plaintiffs seek to deny Adrienne Halperin ("Debtor" or "Defendant") a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(5) and to deny the dischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). The Defendant filed an answer on March 3, 1994 which generally denied the allegations contained in the complaint. On September 12, 1996 the Plaintiffs filed the within motion seeking summary judgment on their claims under 11 U.S.C. § 727(a)(2)(A), (a)(5) and under § 523(a)(2)(A). In response, the Defendant filed a cross–motion for summary judgment on December 12, 1996. For the reasons stated below, the Plaintiffs' motion for summary judgment is denied on all counts. The Defendant's cross–motion for summary judgment is granted only as to count three, which relates to the objection to discharge under § 727(a)(5), and is denied as to all other counts. The Court finds that there are significant questions of material fact regarding the Plaintiffs' claims thus necessitating a trial.

### FACTS

The Defendant filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 7, 1992. By order of this Court, dated April 22, 1993, the Defendant's case was converted to one under Chapter 7. A few months later, in July, 1993, the Plaintiffs instituted this action seeking to deny the Defendant a discharge and to determine the dischargeability of certain debts. The instant summary judgment motion is just the

latest in a protracted legal battle between the Plaintiffs on the one hand, and the Defendant and her husband James Halperin on the other. The genesis of the litigation between the parties, both in and outside of the bankruptcy court, arises out of the employment of James Halperin by the Nate B. and Francis Spingold Foundation ("Foundation"), one of the plaintiffs in this proceeding.[1]

The Foundation is a not-for-profit corporation which formerly employed James Halperin as a director and administrator. During his employment, Mr. Halperin engaged in numerous fraudulent activities and diverted significant amounts of Foundation assets for his personal use, such as for private school tuition for the Halperin children, tickets to the U.S. Open tennis tournament and overseas vacations. In the late 1980's the Attorney General of the State of New York ("Attorney General") commenced an investigation of his alleged fraudulent use of Foundation funds. This investigation led to civil and criminal state court litigation and eventually he was convicted of fraud and tax evasion.[2] As the result of a summary judgment motion made in the state court civil litigation, the Attorney General obtained a judgment, dated May 12, 1992, against him in the amount of $192,864.96.

The state court civil litigation also focused on the Defendant in as much as the Attorney General sought to recover assets which it contended James Halperin had stolen from the Foundation. In July, 1992 the Attorney General sought to enforce against the Defendant the May, 1992 judgment it had obtained against James Halperin. The Attorney General requested that the state court require

"defendants James R. and/or Adrienne Halperin to pay to the Attorney General money sufficient to satisfy the outstanding judgment of this Court, entered against James R. Halperin, docketed on May 12, 1992." On September 1, 1992 the state court issued a decision which granted the Attorney General's request and found that the judgment against James Halperin would also be enforceable against his wife, the Defendant. The state court decision directed the parties to settle an order based upon this decision, but no order was ever presented to the court. Thereafter, the state court litigation was unable to proceed as the Defendant filed for bankruptcy in October, 1992. After the Defendant's bankruptcy case commenced, the Plaintiffs instituted this adversary proceeding to pursue many of the claims originally made against the Defendant in state court.

Through this adversary proceeding the Plaintiffs contend that the Defendant assisted her husband in looting the Foundation's assets by concealing those assets, as well as financial information which would lead to their recovery. The Plaintiffs are seeking to bar the Defendant's discharge pursuant to Bankruptcy Code § 727(a)(2)(A) and (a)(5)[3], and to deny, pursuant to § 523(a)(2)(A), (a)(4) and (a)(6) the dischargeability of debts allegedly owed to them. However, as part of the instant summary judgment motion the Plaintiffs only seek a judgment of dischargeability under § 523(a)(2)(A)[4] as well as their § 727 claims. The Plaintiffs base their dischargeability claim on the September, 1992 state court decision which found the judgment previously obtained against James

---

**1.** The Defendant's husband, James Halperin, has his own bankruptcy proceeding currently pending before this Court. *See In re James* Halperin, Chapter 7 Case No. 193–10045–260. By order dated January 7, 1997 this Court denied James Halperin a discharge in his bankruptcy proceeding.

**2.** The New York state criminal action was entitled *New York v. James Halperin*, Indictment No. 12415–90. The Attorney General's civil action in the New York State Supreme Court, New York County was captioned *Robert Abrams v. James R. Halperin*, Index No. 47336/88.

**3.** All statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and will hereinaf-

ter be referred to only by the appropriate section number.

**4.** The Court notes that the table of contents for the Plaintiffs' memorandum of law in support of their summary judgment motion also lists § 523(a)(4) as a basis for denial of dischargeability. However, the body of the memorandum only discusses § 523(a)(2)(A). Having been presented with argument only as to the § 523(a)(2)(A) count, the Court will consider this to be the sole statutory basis for Plaintiffs' summary judgment motion regarding their dischargeability claim.

Halperin to be enforceable against the Defendant.

The Plaintiffs' request the denial of the Defendant's discharge, pursuant to § 727(a)(2)(A), based upon several alleged fraudulent transfers of cash and jewelry, the Defendant's alleged continuing concealment of the proceeds from a mortgage on the Defendant's former home, and the continuing concealment of proceeds from various sales of art and jewelry.

Finally, pursuant to § 727(a)(5), the Plaintiffs also request a denial of the Defendant's discharge based upon what they contend is an unexplained loss of assets by the Defendant. This claim is grounded on a joint financial statement, dated August 1, 1988, for both the Defendant and her husband which shows combined assets of $10 million. The schedules filed by the Defendant as part of her bankruptcy petition in October, 1992 show assets of approximately $5.7 million. According to the Plaintiffs the discrepancy in amounts between the 1988 financial statement and the Defendant's schedules show a significant decrease in the Defendant's assets for which she has failed to provide an adequate explanation.

In response to the Plaintiffs' summary judgment motion the Defendant filed a cross-motion for summary judgment.[5] The Defendant contends that she owes no debt to the Plaintiffs, thus a judgment of non-dischargeability is inappropriate. She also claims that the September, 1992 state court decision is inadequate as the basis for a non-dischargeable debt. In addition, she claims that her discharge should not be denied due to a failure to explain the alleged loss of assets, contending that the financial statement relied upon by the Plaintiffs was not entirely accurate, and as such it should not be compared with her bankruptcy schedules. Finally, she responds to the Plaintiffs' claims that her discharge should be denied pursuant to § 727(a)(2)(A) by claiming that she has not

fraudulently transferred or concealed any of her assets.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, made applicable to the instant proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where there is "no genuine issue as to any material fact" and the movant would be "entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment has the burden of establishing the absence of any issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To successfully defeat a motion for summary judgment the opposing party must show that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). The filing of cross-motions does not necessarily ensure that summary judgment is appropriate, as issues of material fact may remain despite each party's claim to judgment on the law. See ITCO Corp. v. Michelin Tire Corp. Commercial Div., 722 F.2d 42, 45 n. 3 (4th Cir.1983). In deciding a motion for summary judgment, the court is to view the evidence in the light most favorable to the nonmovant and to assess the sufficiency of the evidence in view of the evidentiary burden imposed by the substantive law. See Anderson, 477 U.S. at 251, 106 S.Ct. at 2511–12. In conjunction with these summary judgment standards, the Court will separately review each substantive claim.

*A. 11 U.S.C. § 727(a)(2)(A)*

 Plaintiffs first request summary judgment on count one of their complaint which seeks to deny the Debtor's discharge pursuant to § 727(a)(2)(A) which provides that,

---

**5.** The Defendant's cross-motion for summary judgment responds to every count in the Plaintiffs' complaint, despite the fact that the Plaintiffs' have moved for summary judgment on only certain of their claims. It is unclear from the Defendant's pleadings whether she intended to request summary judgment on these counts also,

as her papers often state that issues of material fact exist. However, as will be discussed later, the Court finds that issues of material fact abound in this proceeding, thus rendering summary judgment inappropriate. Therefore, it is anticipated that those claims not addressed in this opinion will be fully presented at trial.

(a) The court shall grant the debtor a discharge, unless—

...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

11 U.S.C. § 727(a)(2)(A). The creditor objecting to discharge pursuant to § 727(a)(2)(A) bears the burden of proving the elements required by the statute by a preponderance of the evidence. *See Najjar v. Kablaoui (In re Kablaoui)*, 196 B.R. 705, 708 (Bankr.S.D.N.Y.1996); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr.E.D.N.Y.1993). This burden is consistent with the Bankruptcy Code's overriding objective of allowing honest debtors a fresh start after their bankruptcy and is a recognition of the fact that the denial of a discharge is an "extreme penalty." *See American General Finance, Inc. v. Burnside (In re Burnside)*, 209 B.R. 867, 871 (Bankr. N.D.Ohio 1997); *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 870 (Bankr.S.D.N.Y.1994). To successfully object to a debtor's discharge under § 727(a)(2)(A), the creditor must show all of the following elements:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) with actual intent to hinder, delay, or defraud a creditor;

(3) that the act was that of the debtor;

(4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property.

*See In re Silverstein*, 151 B.R. at 659; *see also In re Kablaoui*, 196 B.R. at 708.

Plaintiffs contend that within one year of filing for bankruptcy the Defendant transferred several valuable pieces of jewelry with the intent to hinder, delay or defraud her creditors. These transfers included the Defendant's June, 1992 sale of "Winston" earrings for $50,000, her sale of "Webb" earrings and an emerald ring in July, 1992 for $75,000 and her sale of an eleven karat diamond ring with two other pieces of jewelry for $90,000 in the Fall of 1991.[6] Regarding the elements required for a § 727(a)(2)(A) objection to discharge, Plaintiffs state in their complaint that these jewelry sales occurred within one year of the Defendant's filing for bankruptcy. In as much as the Defendant's Chapter 11 petition was filed in October, 1992 this contention appears correct, and the Defendant does not contest that these transactions fall within the relevant time period. The Defendant also does not contest that the sales in question were transfers of property within the meaning of the statute, and that she performed the transfers. Thus, the first, third and fourth elements are satisfied.

However, the Defendant does contest that the Plaintiffs have proven the second required element, which requires the objecting creditor to show the debtor performed the transfer in question with the actual intent to hinder, delay or defraud a creditor. *See In re Kablaoui*, 196 B.R. at 709. As direct evidence of the debtor's actu-

---

**6.** Count one of the Plaintiffs' complaint also contends that a $40,000 pre-petition transfer from the Defendant's checking account was a fraudulent transfer sufficient to deny her discharge. However, this transaction is described in the memorandum in support of Plaintiffs' summary judgment motion as being a transfer of $40,000 into the Defendant's checking account by her husband, James Halperin. The Plaintiffs have failed to provide the Court with sufficient evidence to determine the exact nature of the transaction, and more importantly, whether it was performed by the Defendant or by her husband. Although the Defendant states in her affidavit in opposition to the summary judgment motion that she received the $40,000 from her husband and used it to pay family living expenses, this does not clarify the confusion in the Plaintiffs' pleadings. In order to object to discharge based upon a transfer of property within § 727(a)(2)(A), the objecting creditor must show that the transfer was performed by the debtor. *See In re Silverstein*, 151 B.R. at 659. Due to the conflicting descriptions of the transfer contained in the Plaintiffs' own pleadings, the Court will not consider this transaction as supportive of the Plaintiffs' summary judgment motion.

al intent is often not available, the court may infer the debtor's intent from the surrounding circumstances employing factors known as "badges of fraud." *Id.; see also Sacklow v. Vecchione (In re Vecchione),* 407 F.Supp. 609, 615 (E.D.N.Y.1976); *In re Sicari,* 187 B.R. at 871. Transactions containing the badges of fraud are typically characterized by:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*See Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582–83 (2d Cir.1983); *In re Silverstein,* 151 B.R. at 660–61.

In moving for summary judgment on this portion of their complaint, the Plaintiffs claim that the Defendant's jewelry sales were marked by several badges of fraud, and from these the Court should infer that the Defendant had the actual intent to hinder, delay and defraud her creditors when she sold the jewelry in question. The Defendant disputes that she intended to hinder or defraud her creditors by claiming that the jewelry sales were not in any way fraudulent, and that her only intent in selling these items was to obtain money for family living expenses.

The Plaintiffs' complaint states that several badges of fraud were reflected in the jewelry sales, including the fact that there was a lack of or inadequacy of consideration in the transactions, that several of the transactions were made to relatives, that the Defendant sold the jewelry after the Attorney General had commenced civil litigation against the Defendant and her husband, that the sales occurred while she was insolvent

and finally that two of the sales, involving the "Webb" earrings and the eleven karat diamond ring, took place in violation of a state court order which had restricted the Defendant and her husband from transferring most of their personal property. The Plaintiffs move for summary judgment on this count based upon their contention that these badges of fraud are sufficient to prove the Defendant had the intent to defraud when she sold her jewelry.

The Defendant states that summary judgment is inappropriate on the issue of her intent in that the jewelry sales were not marked by badges of fraud sufficient for the Court to infer her intent. To buttress her claim that the sales were solely for the purpose of raising funds to support her family, the Defendant submits to the Court documents which she claims are the receipts she received from each sale. (Def's Aff Opp'n Summ. J. Mot., Exs. 11, 12, 15). She further contends that these sales were not fraudulent by noting that each piece was sold after receiving estimates from several known jewelry dealers, including Tiffany's and Sotheby's, and that she ultimately sold the jewelry to Mr. John Ullman, a professional dealer in precious stones. Thus the Defendant disputes that these transactions were to family members and that they were for less than adequate consideration. The Defendant also disputes that these sales took place either while she was insolvent or that they caused her insolvency. According to her affidavit, the Defendant has never claimed to be insolvent at the time she filed for bankruptcy and points to the schedules she filed as part of her bankruptcy petition to show that her assets exceeded her liabilities.

As the objecting creditors, the Plaintiffs bear the burden of proof in showing that the Defendant acted with the intent to hinder, delay or defraud her creditors when she sold her jewelry. In addition, by seeking summary judgment on this claim the Plaintiffs also bear the burden of showing that there are no genuine issues of material fact as to the Defendant's intent. It is clear from the parties' contentions that the issue of the Defendant's intent is an unresolved issue of material fact. In employing the badges of

fraud, the Plaintiffs seek to have this Court infer the Defendant's intent from the circumstances. However, in the context of a summary judgment motion to deny a discharge, the Court declines to rely on inferences alone in determining the Defendant's intent.

■ It is axiomatic that the provisions denying a debtor's discharge are to be construed liberally in favor of the debtor. *See In re Burnside*, 209 B.R. at 871. This being the case, the Court finds that summary judgment is not appropriate when questions of denial of discharge and intent are intertwined. *See Marine Midland Bank v. Portnoy (In re Portnoy)*, 201 B.R. 685, 703 (Bankr.S.D.N.Y.1996) (noting that in the context of a denial of discharge proceeding "intent to defraud is an issue of fact not properly resolved on a motion for summary judgment"); *see also Hirsch v. Cahill (In re Colonial Realty Co.)*, 210 B.R. 921, 923 (Bankr.D.Conn.1997) (stating that summary judgment is generally "ill-suited for resolving cases involving allegations of intent to defraud"). Here, the Defendant has presented sufficient evidence, in the form of receipts and her own affidavit, to raise genuine issues of material fact as to her intent in selling her jewelry. While certain of the "badges of fraud" may be applicable to the transactions, and the circumstances of the sales may appear somewhat suspicious, a trial is necessary to fully resolve the Defendant's intent and any inference which may be drawn from these circumstances. Therefore, the Plaintiffs' motion for summary judgment on count one of their complaint is denied. Due to these unresolved issues of

material fact, the Defendant's cross–motion for summary judgment is also denied.

■ Next, Plaintiffs move for summary judgment on count two of their complaint, which pursuant to § 727(a)(2)(A) seeks to deny the Defendant's discharge based upon the alleged fraudulent transfer and concealment of the proceeds from a mortgage on the Defendant's former residence (known as the "Kings Point" house) and upon the alleged fraudulent transfer and concealment of approximately one million dollars worth of art, jewelry and the proceeds from their sale.

In 1988, the Attorney General commenced its investigation of James Halperin. Shortly after he learned of the Attorney General's investigation, which it commenced in 1988, James Halperin transferred to the Defendant his one-half interest in the family residence, located in Kings Point, New York. Prior to that transfer the Defendant and her husband had owned the home as tenants by the entirety.[7] In late 1989, as sole owner of the home, the Defendant entered into a revolving loan agreement with Household Finance Corp. ("Household") for approximately $1.4 million. The revolving loan agreement was secured by a mortgage on the Kings Point residence. According to the Plaintiffs, after obtaining about $1 million from the Household credit line, the Defendant disposed of or secreted that money with the intent to hinder, delay or defraud her creditors. Based upon the transfer and alleged concealment of the proceeds of the Household line of credit, the Plaintiffs request that the Defendant's discharge be denied.

---

7. A significant portion of each party's briefs in this matter discusses James Halperin's transfer of the Kings Point house to the Defendant. The Plaintiffs contend that this transfer, which was without consideration, was motivated by the Attorney General's recently commenced investigation. The Defendant vehemently denies this, and instead claims that the transfer took place after she requested title to the home to preserve her children's residence in the event of a divorce. The parties' arguments aside, the relevance of Mr. Halperin's intent in transferring the house is questionable in this proceeding to bar his **wife's** discharge. Section 727(a)(2) requires that the act in question have been performed by the debtor. *See In re Silverstein*, 151 B.R. at 659. While James Halperin's intent may shed some light on

the circumstances surrounding the Defendant's use of the Household mortgage proceeds, it is not dispositive. *See Chicago Title Ins. Co., Inc. v. Mart (In re Mart)*, 75 B.R. 808, 810 (Bankr. S.D.Fla.1987) (refusing to impute fraudulent intent of husband to debtor based solely upon fact that debtor derived benefit from husband's fraudulent conduct). Because this adversary proceeding seeks to bar the Defendant's discharge the parties, notably the Plaintiffs as they have the burden of proof, are admonished to restrict their arguments to the actions of the Defendant. At trial, any reference to the actions of James Halperin may be included only with an explicit statement as to its relevance to the Defendant and the elements required under the applicable statute.

The Defendant denies that she concealed the proceeds obtained from the Household mortgage. In her affidavit in opposition to the Plaintiffs' summary judgment motion she states that of the monies obtained from Household, she used approximately $600,000 to $700,000 to pay other prior mortgages on the Kings Point property and the balance of $300,000 to $400,000 was loaned to her brother in an attempt to save his financially troubled businesses. However, the Defendant never received any loan payments from her brother as his companies went out of business. Thus, the Defendant opposes the Plaintiffs' summary judgment motion on the grounds that she has not concealed any proceeds received from the credit line secured by the Kings Point house. However, her explanation of the disposition of those proceeds contains unresolved issues of material fact which require an evidentiary hearing.

■ Despite the fact that the Defendant obtained the Household line of credit and disposed of the proceeds subsequent to one year prior to filing for bankruptcy, by claiming that the Defendant continued to hide the mortgage proceeds within the year prior to her petition the Plaintiffs have invoked the doctrine of "continuing concealment" in order to qualify under § 727(a)(2)(A). The doctrine of continuing concealment allows § 727(a)(2) to be applied to situations where a transfer or concealment of assets has taken place prior to one year before the bankruptcy filing. *See In re Silverstein,* 151 B.R. at 661. Under the doctrine, a concealment within the meaning of § 727(a)(2)(A) can be found to have existed during the year prior to filing even if the initial act of concealment of assets occurred before this one year period; however the debtor must have continued to conceal his or her interest in the property into the critical year. *See Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993). For example, the doctrine is typically invoked where a debtor has

ostensibly transferred assets outside of the one year period, but within the year prior to filing retains and conceals from his or her creditors a secret interest in the property transferred. *See Hughes v. Lawson (In re Lawson),* 122 F.3d 1237 (9th Cir.1997); *see also In re Portnoy,* 201 B.R. at 693 (noting that concealment may be accomplished by a transfer of title to property combined with the retention of the benefits of ownership). Section § 727(a)(2)(A) requires that in addition to the concealment of the interest in property, the creditor must also show that the debtor had the intent to hinder, delay or defraud creditors within the relevant one year period. *See Small v. Bottone (In re Bottone),* 209 B.R. 257, 262 (Bankr.D.Mass. 1997).

■ In the present case, by invoking the doctrine of continuing concealment, the Plaintiffs apparently claim that the Defendant concealed a retained interest in the proceeds from the Household mortgage, proceeds which the Defendant claims to have paid either to her brother or to a prior mortgagee. However, in support of their continuing concealment claim the Plaintiffs have failed to provide sufficient evidence regarding any retained interest in the mortgage proceeds. From the pleadings submitted, there is little evidence that the Defendant continued to enjoy the "benefits of ownership" regarding the mortgage proceeds.[8] Beyond their own assertions, the Plaintiffs have not provided the Court with any evidence as to the actual disposition of the proceeds from the Household mortgage, much less evidence of any concealment of a retained interest in the proceeds by the Defendant. *See In re Bottone,* 209 B.R. at 263 (finding that a motion for summary judgment on an alleged continuing concealment under § 727(a)(2)(A) could not be sustained due to a lack of verified allegations). A relevant concealment,

---

**8.** The Plaintiffs' complaint states that the fraudulent transfer and concealment alleged against the Defendant is "more particularly described" in the proof of claim, dated January 28, 1993, which the Foundation filed in the Defendant's Chapter 7 case. But the proof of claim does not provide a description of the alleged transfer or concealment. Instead, the proof of claim states

that the basis for the claim is "for participation in and to avoid fraudulent transfer" and refers to three exhibits. The exhibits to the proof of claim all relate to and describe the fraudulent transfer of the Kings Point house from James Halperin to the Defendant. Thus the proof of claim fails to clarify any transfer or concealment actually performed by the Defendant.

for the purposes of denial of discharge, occurs only where the debtor retains a secret interest in the property. *See Rosen,* 996 F.2d at 1532. For the purposes of the instant summary judgment motion, the Court is not satisfied that the Defendant retained a secret interest in the proceeds of the Household mortgage.

■ The Plaintiffs do present evidence tending to show the suspiciousness of the circumstances relating to the Defendant's obtaining the line of credit with Household and her subsequent use of the proceeds. According to the Plaintiffs, the Defendant's use of the mortgage proceeds to pay off a prior mortgage which had a lower rate of interest than the Household loan is a sign that the mortgage was obtained by the Defendant in an attempt to shield her family's assets from creditors. The Plaintiffs also claim that the Defendant's creditors were damaged by the Defendant's actions as the Household mortgage and the alleged squandering of its proceeds reduced the amount of equity which they could recover. However, Plaintiffs' contention that they were damaged by the Defendant's actions is not particularly relevant to whether the Defendant's discharge should be denied pursuant to § 727(a)(2). It has been noted that injury to a creditor alone is not determinative of whether a discharge should be denied, absent a showing of actual intent to defraud a creditor. *See Burnside,* 209 B.R. at 872. Thus any damage the Plaintiffs may have sustained due to depletion of equity in the Kings Point residence can not be the basis for the denial of the Defendant's discharge. According to the Plaintiffs, the Defendant's alleged loan to her brother is also suspicious in that, by the Defendant's own admission, no loan documents were executed, no payment schedule was set and no payments were ever made on

such a sizable transaction. Thus the Plaintiffs may be correct in contending that the questionable nature of these transactions may indicate a fraudulent intent on the part of the Defendant. *See In re Sicari,* 187 B.R. at 872 (stating that a transfer of property to relatives may be an indication of fraudulent intent on the part of the debtor). However, the Court is reluctant to deny a debtor's discharge based solely upon the circumspect nature of a transaction, and even more reluctant given that the instant proceeding is only at the summary judgment stage. *See Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1005 (2d Cir.1976) (holding that absent specific evidence of fraud by debtor, court could not find presence of intent to defraud for purposes of denial of discharge). As genuine issues of material fact exist regarding the Defendant's intent and any continuing concealment pursuant to § 727(a)(2), the Plaintiffs' motion for summary judgment as to the second count of their complaint is denied, as is the Defendant's cross-motion for summary judgment.[9]

■ Plaintiffs' motion for summary judgment is also denied as to that portion of count two of their complaint which seeks to bar the Defendant's discharge based upon the alleged continuing concealment of approximately $1 million in art, jewelry and the proceeds from their sale. From the Plaintiffs' complaint it is unclear exactly what property the Defendant is alleged to have fraudulently transferred and/or concealed a retained interest. Most of this portion of the complaint describes transfers of property made by James Halperin to the Debtor. As stated previously, an objection to discharge pursuant to § 727(a)(2) must relate to an act of the debtor. *See In re Silverstein,* 151 B.R. at 660. The knowledge or receipt of a fraudulent transfer is not itself a basis for

---

9. As has been previously noted, the Plaintiffs' complaint refers to the September, 1992 state court decision which found that a grant of summary judgment previously obtained against James Halperin was enforceable against the Defendant. Although the September, 1992 decision specifically states that "the judgment debtors are systematically conveying their property with intent to defraud their creditors," it contains no specific findings regarding the actions of the Defendant which lead to this conclusion.

(Greathead Aff. Ex. O at 4.) Because the September, 1992 decision does not specifically describe what property, if any, the Defendant fraudulently concealed or transferred, the Court will not rely on it for purposes of fulfilling the elements of a § 727(a)(2)(A) objection to discharge. *See Barr v. Overmyer (In re Overmyer),* 121 B.R. 272, 281 (Bankr.S.D.N.Y.1990) (noting that bankruptcy court would not be guided by prior bankruptcy court's decision as that decision did not satisfy elements of § 727(a)(2)).

the denial of discharge under § 727(a)(2). *Cf. First Texas Savings Assn. v. Reed (In re Reed),* 700 F.2d 986, 993 (5th Cir.1983) (finding that while debtor received benefit from and had knowledge of spouse's fraudulent activities, debtor did not perpetrate them and thus discharge would not be denied). In addition, as previously discussed, the Defendant has provided sufficient evidence to raise issues of material fact as to whether her sales of jewelry were fraudulent transfers. In response to the Plaintiffs' summary judgment motion, the Defendant details the disposition of much of the artwork, noting that many pieces of art were sold by the bankruptcy trustees in both her case and her husband's case. Because the Plaintiffs have failed to clearly state exactly what artwork, jewelry or proceeds they contend the Defendant has continued to conceal an interest in, issues of material fact exist and Plaintiffs' motion for summary judgment on count two of the complaint, as well as the Defendant's cross-motion, must be denied.

## B. 11 U.S.C. § 727(a)(5)

The Plaintiffs request summary judgment on the third count of their complaint, which pursuant to § 727(a)(5) seeks to deny the Defendant a discharge. Section 727(a)(5) provides that a debtor's discharge will be denied where the debtor has "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(2)(A). Unlike an objection based upon § 727(a)(2), § 727(a)(5) does not require fraudulent intent on the part of the debtor. *See First Am. Bank v. Bodenstein (In re Bodenstein),* 168 B.R. 23, 33 (Bankr. E.D.N.Y.1994). Instead, a creditor objecting to discharge under § 727(a)(5) must demonstrate that the debtor does not have or can not account for assets which he or she previously owned. *See Barristers Abstract Corp. v. Caulfield (In re Caulfield),* 192 B.R. 808, 821 (Bankr.E.D.N.Y.1996). If the creditor is able to show this loss of assets, the burden then shifts to the debtor to satisfactorily explain the loss or deficiency of assets. *See In re Bodenstein,* 168 B.R. at 33. The debtor's explanation for the loss of assets does

not have to be meritorious, but it must at least "satisfy the bankruptcy judge that the debtor has not hidden or improperly shielded assets." *Id.; see also In re Silverstein,* 151 B.R. at 663.

Typically, an objection to discharge under § 727(a)(5) is based upon a discrepancy between a prepetition financial statement by the debtor and the debtor's bankruptcy schedules. *See, e.g., Hawley v. Cement Indus. (In re Hawley),* 51 F.3d 246, 249 (11th Cir.1995) (objecting creditor's burden was met by showing discrepancy between prepetition financial statement and debtor's schedules). In the present case, Plaintiffs rely upon a joint financial statement, dated August 1, 1988, which purportedly lists the assets of both the Defendant and her husband. This statement describes assets with a value of over $10 million, including several pieces of real estate, various stock holdings and investments, as well as artwork and jewelry. The financial statement indicates neither the purpose for which it was prepared nor the identity of the preparer. In contrast, the schedules submitted as part of the Defendant's bankruptcy petition (filed in October, 1992) list total assets of approximately $5.75 million. The third count of the Plaintiffs' complaint requests that the Defendant's discharge be denied because she has failed to explain the difference of $4.25 million in assets between the 1988 financial statement and her schedules.

The Defendant opposes the § 727(a)(5) objection on the grounds that the 1988 financial statement was not an accurate description of her financial condition. The Defendant claims that the 1988 statement was prepared by her husband and that the asset values given in that statement were merely his estimates. (Def's Aff. Oppn. Summ. J. Mot. ¶ 85). In addition, she claims that approximately $2.7 million is explained by real estate losses. According to the Defendant, one of the properties listed on the 1988 statement was subsequently sold to avoid a foreclosure, with the first mortgagee receiving all of the proceeds of sale. Another property listed on the 1988 statement, a vacant lot in Florida, was foreclosed upon by the mortgagee and

thus had no value to the Defendant at the time of her filing.

In addition to the real estate losses, the Defendant explains the disparity by claiming that in the four years between the 1988 statement and her 1992 bankruptcy, most of the cash and bank accounts listed on the 1988 statement as having a claimed value of $610,000 were liquidated and used to pay Halperin family living expenses and legal fees. According to the Defendant, this was necessary as James Halperin was unable to work due to the Attorney General's investigation of his activities at the Spingold Foundation, and thus the family had no income. Finally, the Defendant explains the discrepancy by stating that several of the assets listed in the 1988 statement were turned over to the trustee in James Halperin's bankruptcy case and eventually sold by him. Thus, the Defendant claims that between the inaccuracy of the financial statement and the subsequent disposition of property, she has sufficiently explained the difference between the 1988 statement and her schedules.

In the Court's judgment, the Defendant has provided satisfactory explanations for any loss or deficiency in her assets as described in the 1988 financial statement. The Court finds that the accuracy of the 1988 statement is indeed questionable, as the Defendant contends, in that the statement is a "joint" one and fails to distinguish between those assets which may belong to the Defendant and those which belonged to her husband. The statement's accuracy is further decreased by her contention that it was based solely upon estimates by her husband—a contention which is uncontroverted by the Plaintiffs. The significant decrease in the Defendant's real estate holdings is plausibly explained by the foreclosure sale of one property and the sale of another property which benefitted only the mortgagee. Finally, the four year lapse in time between the statement and the Defendant's bankruptcy explains the loss in cash and bank accounts. The Court finds that the Defendant has sufficiently explained any discrepancy in assets between the 1988 joint financial statement and her 1992 bankruptcy schedules. Therefore, Plaintiffs' summary judgment motion on

the third count of their complaint, seeking to deny Defendant's discharge pursuant to § 727(a)(5) is denied. As the Plaintiffs have failed to counter the explanations provided by the Defendant, there are no issues of material fact as to the § 727(a)(5) objection to discharge. Thus, the Defendant's motion for summary judgment on that count is granted.

### C. 11 U.S.C. § 523(a)(2)

The Plaintiffs also move for summary judgment on that portion of their complaint which seeks to have the Court find that Defendant's debt to Plaintiff is non-dischargeable pursuant to § 523(a)(2)(A). Section 523(a)(2)(A) provides that a discharge will not apply to any debt,

> (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). The creditor seeking a determination of dischargeability bears the burden of proving each element of the statute by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); Bethpage Federal Credit Union v. Furio (In re Furio), 77 F.3d 622, 624 (2d Cir.1996). For the Plaintiffs to succeed on their claim of non-dischargeability, they must establish each of the following elements:

> (1) The debtor made a false representation;
>
> (2) That at the time the representation was made, the debtor knew it was false;
>
> (3) That the debtor made the representation with the intention and purpose of deceiving the creditor;
>
> (4) That the creditor relied on the representations; and
>
> (5) That the creditor sustained loss or damages as the proximate result of the representations having been made.

See In re Caulfield, 192 B.R. at 819; Arndt v. Hanna (In re Hanna), 163 B.R. 918, 924 (Bankr.E.D.N.Y.1994).

The Plaintiffs seek summary judgment as to the dischargeability of a debt arising out of the September, 1992 decision by the state court which found an award of summary judgment in favor of the Attorney General and against James Halperin in the amount of $192,804.96 to be enforceable against the Defendant. Apparently relying on the doctrine of collateral estoppel, the Plaintiffs contend that the state court decision found that the Defendant engaged in fraudulent transfer activity, along with her husband. The Plaintiffs request that this Court defer to the findings in the September, 1992 decision and determine that the summary judgment for $192,804.96, held to be enforceable against the Defendant, is non-dischargeable.

 The doctrine of collateral estoppel is designed to obviate the need to relitigate specific issues which were decided in a prior proceeding by a court of competent jurisdiction. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979). Collateral estoppel may be used in dischargeability actions where as here there has been a prior state court decision, but the doctrine's application should be limited to circumstances where the fact issues in the state and federal proceedings are "substantially identical." *See Rupert v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 49 (Bankr.S.D.N.Y. 1997) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Under New York law, in order to employ the doctrine of collateral estoppel it must be shown that the issue sought to be precluded was "necessarily decided" by the prior court and that the litigant had a "full and fair opportunity" to litigate that issue in the prior proceeding. *See Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993).

 The Defendant opposes the application of collateral estoppel to the September, 1992 decision by claiming that the requirements described above have not been fulfilled. First, she denies the applicability of the September, 1992 decision on the basis that it is not a final order for purposes of collateral estoppel. She contends that under New York law, without the entry of an order or final judgment, a judge's decision has no

preclusive effect. However, it has been noted that the rules of collateral estoppel should not be applied mechanistically, as the doctrine is based foremost upon notions of fairness. *See In re Krautheimer,* 210 B.R. at 51. Instead, the Court will apply the doctrine in a functional and pragmatic manner, and will not preclude the use of the September, 1992 decision on the basis that it is not an order or final judgment. *See Feldstein v. New York City Dep't of Consumer Affairs,* 804 F.Supp. 471, 474–75 (E.D.N.Y.1992), *aff'd,* 993 F.2d 1533 (2d Cir.1993) (applying collateral estoppel to a state court order which directed the parties to settle a judgment).

 Second, the Defendant opposes the use of collateral estoppel on the basis that she did not have a full and fair opportunity to contest the issues in the prior state court proceeding. She claims that upon the advice of counsel, she did not vigorously oppose the motion seeking to enforce the summary judgment against her and did not submit to the court her own affidavit in opposition. Instead, her attorney submitted opposition on her behalf. It is the burden of the party opposing the use of collateral estoppel to demonstrate that it did not have a full and fair opportunity to litigate the issues in the prior case. *See In re Krautheimer,* 210 B.R. at 50 (discussing apportionment of burdens regarding the elements required for the application of collateral estoppel). The determination of whether a party has had a full and fair opportunity to be heard focuses on the "various elements which make up the realities of litigation," including such factors as the forum of the prior litigation, the competence and experience of counsel, the foreseeability of future litigation and the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter. *See Conte,* 996 F.2d at 1401 (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). Upon application of these factors, the Court is satisfied that the Defendant had a full and fair opportunity to litigate in the prior state court proceeding. The Defendant claims that her attorney failed to give her objective counsel

due to his simultaneous representation of her husband in his criminal proceeding. However, because she offers nothing but her own statement to support her contention the Court finds that the Defendant was adequately represented. Therefore the Court's refusal to apply collateral estoppel will not be based upon the Defendant's claim that she did not have a full and fair opportunity to litigate the enforcement of the summary judgment motion.

▮▮▮ Notwithstanding the foregoing, in applying collateral estoppel to a state court decision to determine dischargeability under § 523(a), the bankruptcy court has the obligation to carefully examine the record of the state court proceeding. *See In re Krautheimer*, 210 B.R. at 52. For the court to apply collateral estoppel in a dischargeability proceeding, the requisite elements for a § 523(a) claim must have been specifically decided by the state court. *Id.* In relying on collateral estoppel to fulfill their burden of proof, the Plaintiffs must supply the court with a "record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 23 (S.D.N.Y.1989). Upon the record presented by the Plaintiffs, the Court concludes that collateral estoppel should not be applied to the September, 1992 state court decision as it does not conclusively prove fraud as required by § 523(a)(2)(A).

The September, 1992 state court decision resulted from a motion made by the Attorney General requesting various forms of relief, including the enforcement against the Defendant of a prior grant of summary judgment against James Halperin. That prior summary judgment order was apparently related specifically to his fraudulent use of Spingold Foundation funds for personal expenses. However, the Plaintiffs later sought to enforce that judgment against the Defendant, and the September, 1992 decision was the result. The decision states that the plaintiff in that action, the Attorney General, presented specific proof, including supporting documents, regarding fraudulent transfers made by James Halperin and the Defendant. (Greathead Aff. Ex. O at 3.) It also finds that there was a "secreting or disposal of particular assets with intent to defraud" and that the "judgment debtors are systematically conveying their property with intent to defraud their creditors." (*Id.* at 4). In granting the Attorney General's motion, the decision states that under New York law it is permissible to direct a judgment debtor to pay money within his control, and to seek a judgment against a fraudulent transferee.[10] (*Id.*) The decision concludes by directing the parties to settle an order.

While the state court decision is replete with references to fraudulent intent and seems to rely on evidence of that intent, it still lacks specific findings regarding the actions of the Defendant. The decision does not with any clarity find that the Defendant committed actions fulfilling the requirements of § 523(a)(2)(A). The decision does find that the Defendant and her husband engaged in fraudulent transfer activity, and undoubtedly this was the basis for holding that the prior summary judgment award was enforceable against the Defendant. But there is not a specific finding that the Defendant committed a fraudulent act which gave rise to the $192,864.96 debt owed to the Plaintiffs. There is a crucial distinction between engaging in a fraudulent transfer of property and incurring a debt through fraud. The September, 1992 state court decision does not find that the Defendant owed a debt to the Plaintiffs based upon any fraud she committed, as required by § 523(a)(2)(A).

In addition, the Court is hampered in evaluating the state court decision by the insufficient record submitted by the Plaintiffs. As part of their motion for summary judgment, the Plaintiffs provided the Court with the September, 1992 decision, an affidavit submitted to the state court in support of the motion to find the summary judgment enforceable against the Defendant, and a copy of the original summary judgment against James Halperin for $192,864.96. Among these documents, there is no indication that the enforcement of the summary judgment

**10.** Section 550 of the Bankruptcy Code provides for similar relief against a transferee, to the extent that a transfer is avoided pursuant to, *inter alia,* §§ 544 and 548.

award against the Defendant was based upon her fraudulent conduct. In seeking to invoke the collateral estoppel doctrine, the Plaintiffs bear the responsibility of providing the Court with a record of the state court proceeding which reveals findings sufficient to fulfill the elements required under § 523(a)(2). Absent such a record, the Court will not draw any inferences or make any assumptions regarding the September, 1992 decision. *See In re Tobman,* 107 B.R. at 24 (finding that bankruptcy court's "impressionistic characterizations" of state court proceeding did not satisfy the conditions for use of collateral estoppel). The September, 1992 decision alone is an inadequate basis for a determination of non-dischargeability. Therefore, Plaintiffs' motion for summary judgment as to their claim of dischargeability pursuant to § 523(a)(2)(A) is denied. As genuine issues of material fact exist regarding the Defendant's actions and intent in incurring the debt for $192,864.96, the Defendant's cross-motion for summary judgment as to dischargeability is also denied.

## CONCLUSIONS

1. This Court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York. This is a core matter under 28 U.S.C. § 157(b)(2)(I) & (J). Venue is proper pursuant to 28 U.S.C. § 1409.

2. Plaintiffs' motion for summary judgment as to count one of their complaint, the objection to the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), is denied. Defendant's cross-motion for summary judgment on count one is also denied.

3. Plaintiffs' motion for summary judgment on count two of their complaint, the objection to the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) is denied. Defendant's cross-motion for summary judgment on count two is also denied.

4. Plaintiffs' motion for summary judgment on count three of their complaint, the objection to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5) is denied. Defendant's cross-motion for summary judgment

as to the objection to discharge contained in count three is granted.

5. Plaintiffs' motion for summary judgment seeking a determination of non-dischargeability pursuant to § 523(a)(2)(A) is denied. Defendant's cross-motion on this claim is also denied.

6. The Court will simultaneously enter an order in conformance with this opinion.