In re Frank ZANGARA, Debtor.

John G. O'BRIEN, Plaintiff;

v.

Frank ZANGARA, Defendant.

Bankruptcy No. 897–81612–478.
Adversary No. 898–8353–478.

United States Bankruptcy Court,
E.D. New York.

Feb. 25, 1998.

---

Mulholland & Knapp, LLP by Edwin M. Mulholland, New York City, for Plaintiff.

Weber & Pullin, LLP by Allan L. Pullin, Woodbury, NY, for Debtor–Defendant.

### DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SECTION 523(a)(2)(A) CAUSE OF ACTION

DOROTHY EISENBERG, Bankruptcy Judge.

John G. O'Brien ("O'Brien" or the "plaintiff"), a resident of Texas, commenced a non-dischargeability action *pro se* against the debtor, Frank J. Zangara ("Zangara" or "the Debtor"). O'Brien then retained Mulholland & Knapp, a New York City law firm, to represent him in the adversary proceeding. O'Brien's counsel filed a Second Amended Complaint on November 12, 1997, alleging that Zangara's debt to O'Brien, arising out of a NASD Arbitration Award issued in January 1996, is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

O'Brien has now moved for summary judgment based on the §§ 523(a)(2)(A) and 523(a)(6) causes of action. Zangara has filed opposition to the summary judgment motion.

After reviewing all of the pleadings filed herein, the summary judgment motion filed by O'Brien, the Debtor's opposition to the summary judgment motion, the Affidavit in Opposition filed by Zangara, and the memoranda of law, and after hearing oral argument by counsel to O'Brien in support of the motion and by counsel to Zangara in opposition, the Court grants summary judgment in favor of O'Brien in regard to his Section 523(a)(2)(A) cause of action and denies summary judgment in regard to the Section 523(a)(6) cause of action.

### FACTS

The Court makes the following findings of fact:

1. Zangara is a stockbroker who, at all relevant times, was employed by Robert Todd Financial Corp. ("RTFC"), a now defunct brokerage firm registered with the NASD. Zangara worked out of RFTC's office located in Garden City, New York.

2. In or about June 1992, Zangara solicited O'Brien, who at the time was 75 years old and lived in Amarillo, Texas, by telephone "cold call". O'Brien opened an account with RTFC.

3. On or about June 16, 1992, in connection with opening the account with RTFC and as required by the rules of the NASD and the New York Stock Exchange, O'Brien executed a Customer Agreement with Bear Stearns Securities, the clearing agent for RTFC, which, at paragraph 22, provides for binding arbitration of any and all controversies arising between the parties concerning the account.[1]

4. On or about October 27, 1993, O'Brien filed a Statement of Claim with the NASD against Zangara, RTFC and other individuals, thereby commencing an arbitration pro-

---

1. Paragraph 22 of the Bear Stearns Customer Agreement provides, in pertinent part, as follows:

— Arbitration is final and binding on the parties.
— The parties are waiving their right to seek remedies in court, including the right to jury trial.
— Pre-arbitration discovery is generally more limited than and different from court proceedings.

— The Arbitrators' Award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the Arbitrators is strictly limited.
— The panel of Arbitrators will typically include a minority of Arbitrators who were or are affiliated with the securities industry.
(Customer Agmt., para. 22, filed as Exh. "A" to Debtor's opposition to summary judgment motion).

ceeding (the "Arbitration Proceeding"). On or about August 8, 1994, O'Brien filed his First Amended Statement of Claim against RTFC, Zangara and certain other individuals, asserting, among other things, that Zangara made unauthorized trades in his account, in violation of the Texas Deceptive Trade Practices Act ("DPTA"), Tex. Bus. & Com.. Code § 17.50, Tex. Bus. & Com.. Code § 27.01, and Section 33 of the Texas Securities Act, Tex. Stat. Ann. Art. § 581–33 The other claims asserted by O'Brien against Zangara in the Arbitration Proceeding involved alleged violations of Section 10(b) of the Securities Exchange Act of 1934, alleged violations of Sections 5 and 12(1) of the Securities Act of 1933, and alleged violations of the NASD Rules of Fair Practice. However, the Arbitrators clearly indicated that their decision was not based on the other claims asserted by O'Brien, but only upon those stated herein.

5. After examining O'Brien's First Amended Statement of Claim filed in the Texas Arbitration Proceeding[2] the Court finds that it is a clear statement of O'Brien's arbitral claims.

6. Paragraph 11 of the First Amended Statement of Claim alleges that, in March 1993 and again in May and June 1993, when confronted by O'Brien and/or members of O'Brien's staff about Regulation T Notices from RTFC and/or its clearing agent demanding payment for unauthorized purchases in the account, Zangara replied that the subject trades were mere clerical errors which Zangara would correct; that O'Brien should ignore the demands for payment for such unauthorized purchases; and that Zangara, without authority, then sold positions from O'Brien's account at a loss to cover the unauthorized purchases.

7. Hearings were held before a panel of three arbitrators (the "Arbitration Panel") in NASD District 6 located in Dallas, Texas, at various times between May 18, 1995 and October 17, 1995. Zangara appeared personally and testified under oath in his defense.

8. On or about January 30, 1996, the Arbitration Panel rendered an Arbitration Award (the "Award") in favor of O'Brien and against Zangara in the aggregate amount of $121,461.75. The Award was broken down as follows: $45,595.75 in actual damages, $50,-000.00 in punitive damages and $25,866.00 in attorney fees, with simple interest accruing on the portion of the Award relating to actual and punitive damages at the rate of 10% per annum.

9. The Court has examined the Award and finds that it is a detailed written memorandum, which includes, among other things, a description of the pleadings filed by the various parties, a Case Summary, the Relief Requested, a description of the Award and the statutory basis therefor. The Court finds that the absence of specific factual findings and reasoning is counterbalanced by the fact that the arbitrators have clearly enunciated the statutory basis for the Award; i.e., Sections 17.50(d) and 27.01 of the Texas Business and Commerce Code and Section 33 of the Texas Securities Act (Award, pars. 2 and 3). The Award specifically provides that "[a]ny requests for relief not specifically enumerated herein are specifically denied and dismissed in their entirety" (Award, para.4).

10. The Award provides in pertinent part as follows:

> O'Brien alleged that commencing in November of 1992 and continuing through 1993, Zangara made a number of unauthorized transactions in O'Brien's account. Among the unauthorized trades were purchases of 5,000 shares of IVF America, 6,000 shares of Champions Sports, Inc., 3,000 shares of Lifecell Corp., 5,000 shares of American Biomed, Inc. and 10,000 shares of Champion Sports, Inc. O'Brien alleged that he learned of the unauthorized trades upon receipt of Regulation T margin call notices. O'Brien paid for the trades but told Zangara not to make any additional unauthorized trades in his account. Despite this admonition, O'Brien alleged that Zangara made additional unauthorized trades in American Biomed,

---

2. O'Brien's First Amended Statement of Claim was filed as an exhibit to the Amended and Restated Complaint in this adversary proceeding, which was filed by the plaintiff *pro se,* prior to his retaining counsel in this action, and forms a part of the record herein.

Inc., Lifecell Corp, California Quartz, Inc., American Enterprises, Video Lottery Technology, Inc., Biomechanics Corp., Rally's Inc., Supermack Technology and Pharmhouse Corp. As a result of Zangara's unauthorized trading activities, ... he [O'Brien] lost substantial sums of money. O'Brien alleged that Zangara's activities violated the Texas Deceptive Trade Practices Act.

(Award, p. 3, filed as Exh. "A" to summary judgment motion.)

11. The Award further states that "Zangara denied the allegations of the statement of claim and asserted that all purchases for O'Brien's account were authorized before they were made."[3] (Award, p. 3, filed as Exh. "A" to summary judgment motion.)

12. The Award also states that, in determining to award punitive damages and attorney fees, the arbitrators considered, inter alia, Section 27.01 of the Texas Business and Commerce Code as legal authority provided by Claimant [O'Brien]. (Award, paras. 2 and 3, filed as Exh. "A" to summary judgment motion.) The other two statutes considered by the Arbitration Panel in determining to award punitive damages and attorney fees were Section 17.50(d) of the Texas Business and Commerce Code and Section 33 of the Texas Securities Act (Award, paras. 2 and 3). As admitted by Zangara in his opposition papers (Zangara Affidavit, paras. 17–21), all three statutes relied upon by the Arbitration Panel in issuing the Award involved fraud by reason of making a false representation or a materially misleading statement on which the claimant relied to claimant's detriment.

13. Section 27.01 of the Texas Business and Commerce Code provides, at subsection (a) that:

Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract....

Tex. Bus. & Com.. § 27.01(a).

14. Subsection (c) of Section 27.01 of the Texas Business and Commerce Code provides for the award of punitive damages in the event of a finding of fraud:

A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual malice.

Tex. Bus. & Com.. Code § 27.01(c).

15. The Arbitration Panel's Award of money damages to O'Brien constitutes a finding that O'Brien's testimony that Zangara made unauthorized trades was credible and that Zangara's testimony that all trades were authorized was not credible.

16. The Arbitration Panel's reliance on Section 27.01 of the Texas Business and Commerce Code in issuing the Award constitutes a finding that Zangara made a false representation to O'Brien in connection with the unauthorized trades, which conduct amounted to fraud.

17. The Arbitration Panel's reliance on Section 27.01 of the Texas Business and Commerce Code in awarding punitive damages and attorney fees constitutes a finding that the false representation was made with actual awareness of the falsity thereof.

18. In 1996, the Debtor commenced an action in the Supreme Court of the State of New York, County of New York, styled *Frank Zangara and Robert B. Fallah v. John G. O'Brien, Robert Todd Financial Corp. and Todd M. Spheler,* Index No.

---

**3.** This Court notes that Zangara has changed his position regarding the trades he executed in O'Brien's account for purposes of this adversary proceeding; i.e., Zangara no longer claims that all purchases were authorized before they were made; instead, he now claims that all trades were either authorized before they were made *or ratified by O'Brien afterward.* (Answer to Second Amended Complaint, para. "Third".)

601072/96, to vacate or modify the Award, which action was dismissed as against O'Brien on the grounds of lack of personal jurisdiction.[4] (Amended and Restated Complaint, Exh. 1(b)).)

### DISCUSSION

■ Fed.R.Civ.P. 56(c), as made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e), as made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides that when confronted with a summary judgment motion thus supported, the non-moving party "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." The Debtor has not raised any specific facts demonstrating that there is a genuine issue for trial, but, rather, contends that this Court may not give preclusive effect to the NASD Award because it does not set forth the arbitrators' findings of fact or reasoning. The procedural matters take place within the context of the governing substantive law, which is the substantive law of Texas.

■ O'Brien's summary judgment motion alleges that, under the principles of collateral estoppel, this Court should give full faith and credit to the Award of the Texas Arbitration Panel. A prior state court judgment may bar discharge of the debt evidenced by that judgment if (I) the law of the state where the judgment was rendered would give preclu-

sive effect to the judgment and (ii) under federal law, no exception to the full faith and credit statute, 28 U.S.C. § 1738, applies. *In re Marx*, 171 B.R. 218, 220 (Bankr.N.D.Tex. 1994), citing *In re Limbaugh*, 155 B.R. 952, 956 (Bankr.N.D.Tex.1993).

### I. *Texas Courts Would Give Preclusive Effect to the Award*

■ A Texas federal court, in the exercise of its discretion, may preclude relitigation of issues previously determined in an arbitration if the court finds, under the facts of that case, that (a) the arbitral procedures afforded due process, (b) the requirements of offensive collateral estoppel are met, and (c) the case raises no federal issues warranting special protection. *Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir.1991).

#### A. *Arbitration Procedures Afforded Due Process*

The Court finds that the arbitration procedures employed by the NASD Arbitration Panel afforded the Debtor his due process rights. This finding is based, in part, on the requirement that all controversies arising out of the brokerage account were to be decided by binding arbitration, the parties waived their rights to seek judicial remedies, the parties were advised that pre-arbitration discovery is generally more limited than and different from court proceedings and that the rights of appeal and to seek modification of the arbitrators' rulings are strictly limited (Customer Agmt., para. 22). The finding is also based on the fact that Zangara participated in the arbitration hearings and testified under oath before the arbitrators. Furthermore, the Supreme Court of the State of

---

4. Paragraph 22 of the Customer Agreement contains a choice of forum provision specifying that the customer may elect an arbitration panel appointed by the New York Stock Exchange, the American Stock Exchange or the NASD (Debtor's opposition to summary judgment motion, Exh. "A"). Paragraph 22 also provides that the award of the arbitrators shall be final and that judgment upon the award may be entered in any court, state or federal, having jurisdiction (Debtor's opposition to summary judgment motion, Exh. "A"). O'Brien elected to have an arbitration panel appointed by the NASD. Venue was

decided by O'Brien's domicile in Amarillo, Texas, and by the fact that RTFC was a member firm of the NASD, was incorporated in Texas and conducted business within the State of Texas and NASD District 6. At all times relevant to O'Brien's claims, Zangara was a registered representative of RTFC, registered with the NASD. (O'Brien's First Amended Statement of Claim, paras. 1–3.) In the arbitration proceeding, O'Brien alleged, among other things, violations of the Texas Deceptive Trade Practices Act and the fraud provisions of the Texas Securities Law.

New York, County of New York, dismissed Zangara's action to vacate or modify the Award in favor of O'Brien. Consequently, there is ample evidence that the Debtor was afforded his due process rights.

■ The Debtor contends that since different evidentiary standards were applied by the arbitrators than would be applied by a federal court, the Award cannot be given preclusive effect in this dischargeability action. Zangara cites one case, *In re Barigian*, 72 B.R. 407 (Bankr.C.D.Cal.1987), for the proposition that, because arbitration panels are not bound by the Federal Rules of Evidence, the Award granted to O'Brien may not be given preclusive effect in this dischargeability action. However, *Barigian* was decided before the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), which held that collateral estoppel applied in nondischargeability proceedings and liberalized the standard of proof required from clear and convincing evidence to a preponderance of the evidence. In *Grogan*, the Supreme Court encouraged the use of collateral estoppel to prevent relitigation of issues and reiterated its position that the Bankruptcy Code's "fresh start" policy is limited to "honest but unfortunate" debtors. *Id.*, 498 U.S. at 287, 111 S.Ct. at 659. To the extent that *Barigian* stands for the proposition that because arbitration panels are not bound by the Federal Rules of Evidence, awards will not be given collateral estoppel effect, it has not been followed by other bankruptcy courts. In fact, it has been criticized for setting forth a theory which, if followed, would effectively prohibit the application of collateral estoppel for virtually *any* arbitration awards and even many state court judgments. *In re Clayton*, 168 B.R. 700, 705 (Bankr.N.D.Cal.1994); *In re Selmonosky*, 204 B.R. 820, 826–27 (Bankr. N.D.Ga.1996).

### B. *Requirements of Collateral Estoppel are Met in Connection With O'Brien's Section 523(a)(2)(A) Claim*

■ This Court finds that a Texas court would give preclusive effect to the Arbitration Award insofar as it bars dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2)(A). In *Universal American Barge Corp. v. J–Chem, Inc.*, the Fifth Circuit stated:

The application of collateral estoppel from arbitral findings is a matter within the broad discretion of the district court, and a district court's discretion in deciding whether to give arbitral findings preclusive effect also keeps the risk of prejudice at an acceptable level, at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written memorandum.

946 F.2d at 1137 (citations omitted). The Court of Appeals noted that the absence of written findings and reasons may make preclusion impossible *"unless necessarily implied from the nature of the claim and award."* *Id.* (emphasis supplied). Nonetheless, the party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir.1992). In the case at bar, fraud based on Zangara's false representation is clearly and necessarily implied from the nature of O'Brien's First Amended Statement of Claim; together with a close reading of the three statutes upon which the arbitrators based the Award; and the unambiguous language of the Award itself.

Zangara argues that the arbitrators misconstrued the Texas statutes on which they based the Award because they did not find that Zangara made any false representations upon which O'Brien relied to his detriment (Zangara Affidavit, paras. 17–25). However, the Debtor's argument misses the essential point: the Award necessarily contained a finding that Zangara made a false representation in connection with the unauthorized trades. O'Brien alleged in his First Amended Statement of Claim that, in March 1993 and then again in May and June 1993, Zangara represented to O'Brien and/or members of O'Brien's staff that certain unauthorized purchases in O'Brien's accounts were mere mistakes that Zangara would have corrected by the appropriate personnel at RTFC and that O'Brien should ignore the Regulation T Notices from RTFC and/or its clearing agent demanding payment for the trades (First

Amended Statement of Claim, para. 11). O'Brien further alleged that Zangara, without authority, then sold positions from O'Brien's account at a loss to cover the unauthorized purchases (First Amended Statement of Claim, para. 11). By awarding O'Brien $121,461.75 in damages, including punitive damages, which are only awarded upon a finding that the securities salesman knowingly made a false representation in connection with the transaction (§§ 27.01(a) and 27.01(c), Tex. Bus. & Com.Code), the arbitrators necessarily made the finding that Zangara made false representations upon which O'Brien relied to his detriment.

Furthermore, the Debtor relies solely on Judge Duberstein's 1994 decision in *In re Hanna*, 163 B.R. 918 (Bankr.E.D.N.Y.1994) (hereinafter *"Hanna I"*) to demonstrate that this Court cannot give preclusive effect to the Award. Specifically, the Debtor makes much of the fact that in *Hanna I*, Judge Duberstein found that "the absence of factual findings or any explanation of the arbitrators' rationale renders the basis of their decision ambiguous and is fatal to the Plaintiff's motion for summary judgment." *Id.* at 926. However, *Hanna I* is distinguishable from the instant case. In *Hanna I*, Arndt obtained an NASD arbitration award against Hanna, who later filed a chapter 7 case and sought to have the award discharged in bankruptcy. Arndt's complaint in the arbitration proceeding contained eight separate claims for relief against Hanna and the brokerage firm at which he was employed. The complaint alleged "a laundry list of instances where [Hanna] either executed trades in [Arndt's] account without her prior authorization or failed to effect transactions as she had instructed," *Id.* at 920, and alleged fraud pursuant to Section 10(b) of the Securities

Act of 1933 and the rules and regulations promulgated thereunder, common law fraud, negligence and recklessness, and violations of Section III of the NASD Rules of Fair Practice. Judge Duberstein found that the arbitrators' award neither indicated upon which claim the liability was based nor indicated whether or not the debtor had committed fraud, *Id.* at 924, and that "a finding for [Arndt] on any one of these claims could have given rise to the relief granted." *Id.* at 926–27. In the case at bar, the Arbitrators' reliance solely on fraud statutes as the basis for the Award necessarily implies a finding of fraud based on false representation.

■ In order for a Texas federal court to apply the doctrine of collateral estoppel and grant preclusive effect to the Award, the Fifth Circuit requires that the following four elements must be satisfied:

> (1) That the issue under consideration be identical to the issue previously litigated;
>
> (2) That the issue was fully and vigorously litigated in the prior proceeding;
>
> (3) That the previous determination of the issue was necessary for the judgment in the prior proceeding; and
>
> (4) That no special circumstances exist that would render preclusion inappropriate or unfair.

*Universal American Barge*, 946 F.2d at 1136.[5] The Court finds that all four requirements have been met in this case.

### (1) *Identical Issue In Both Proceedings*

■ The required elements to establish nondischargeability under Section 523(a)(2)(A) are (1) the debtor made the representations; (2) that at the time the representations were made, the debtor knew them

---

5. If this Court were to be bound by New York principles of collateral estoppel, the plaintiff would have to demonstrate the following four elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Hanna I*, 163 B.R. at 925.

Under New York law, collateral estoppel applies to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award. *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir.1997). Under federal law, the same collateral estoppel effect would be given to a non-confirmed arbitration award. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). New York principles of collateral estoppel do not require a showing that no special circumstances exist that would render preclusion inappropriate or unfair, which is required under Texas law.

to be false; (3) that the debtor made the representations with the intent and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that such representations were the proximate cause of creditor's loss. *In re Hanna,* 197 B.R. 413, 423–24 (Bankr.E.D.N.Y.1996) (hereinafter *"Hanna II"*). The arbitrators awarded actual damages, punitive damages and attorney fees because Zangara violated Section 27.01 of the Texas Business and Commerce Code. Fraud in connection with a stock transaction under Section 27.01(a) consists of a (1) false representation of a past or existing material fact; (2) when the false representation is made to a person for the purpose of inducing that person to enter into a contract; and (3) relied on by that person in entering into that contract. Moreover, Section 27.01(c) of the Texas Business and Commerce Code provides that a person who makes a false representation with actual awareness of the falsity thereof commits the fraud described in Subsection (a) and is liable to the person defrauded for exemplary (or punitive) damages. Here, the Arbitration Panel awarded punitive damages to O'Brien, thereby implicitly finding that Zangara made the false representation with an awareness of its falsity and committed the fraud described in Section 27.01(a), which satisfies the first and second elements of Section 523(a)(2)(A). Furthermore, if Zangara knowingly màde the false representation, he had the requisite intent to deceive, which satisfies the third element of Section 523(a)(2)(A). The award of actual damages by the arbitrators demonstrates that Zangara's false representation was the proximate cause of O'Brien's loss. Finally, both Section 27:01(a) of the Texas Business and Commerce Code and Section 523(a)(2)(A) require reliance by the creditor. The Court notes that Section 27.01 of the Texas Business and Commerce Code does not specify the degree of reliance required to violate the statute.

The fourth prong of the nondischargeability test required by Section 523(a)(2)(A) of the Bankruptcy Code requires a plaintiff to show that he relied to his detriment on the false representation of the Debtor. Based on the recent Supreme Court case of *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351

(1995), the standard to be employed is now justifiable, as opposed to reasonable, reliance, 516 U.S. at 73–76, 116 S.Ct. at 446; *Hanna II,* at 425. "Justification is a matter of the qualities and characteristics of the particular case, and the circumstances of the particular plaintiff, rather than of the application of a community standard of conduct to all cases." *Field,* 516 U.S. at 71, 116 S.Ct. at 444 (quoting RESTATEMENT (SECOND) OF TORTS, Sec. 545(A) (1976)); *Hanna II,* at 426. Justifiable reliance represents a lesser burden on fraud plaintiffs than what reasonable reliance might imply. *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1025 (5th Cir.1991). In *Haralson,* the Fifth Circuit Court of Appeals specifically held that justifiable reliance was the standard required by Section 27.01(a) of the Texas Business and Commerce Code because the statute was derived from Texas common law fraud. *Haralson,* 919 F.2d at 1025, n. 4. Since the Arbitration Panel applied the standard of justifiable reliance in issuing the award, the fourth prong of the Section 523(a)(2)(A) nondischargeability test is met. Consequently, the Arbitrators decided the identical issue in the Arbitration Proceeding that this Court is called upon to decide with regard to O'Brien's Section 523(a)(2)(A) cause of action.

### (2) *The Issue Was Fully and Vigorously Litigated*

The Court finds that the issue of fraud was fully and vigorously litigated in the arbitration proceeding. This finding is evidenced by the fact that Zangara (I) was served with O'Brien's initial Statement of Claim and First Amended Statement of Claim; (ii) filed a Statement of Answer; (iii) appeared at the hearings conducted by the NASD Arbitration Panel and testified under oath to dispute O'Brien's claims; (iv) received a written copy of the NASD Arbitration Award; and (v) commenced an action in the New York Supreme Court, New York County, to vacate or modify the Award, which proceeding was dismissed as against O'Brien.

### (3) *Determination of Issue Was Necessary for Award*

As discussed more fully above in the introductory paragraphs to the caption "Require-

ments of Collateral Estoppel Are Met in Connection With O'Brien's Section 523(a)(2)(A) Claim," the determination of the identical issue was necessary for the arbitrators to issue the Award. That is to say, the Arbitration Panel necessarily made a finding of fraud based on Zangara's false representation and O'Brien's reliance.

#### (4) *No Special Circumstances Render Preclusion Inappropriate or Unfair*

The United States Supreme Court declined to bar the use of collateral estoppel with respect to arbitration awards in subsequent federal court litigation, though the Supreme Court required consideration of the "federal interests warranting protection." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985). In the context of a dispute over the dischargeability of a debt under 11 U.S.C. § 523(a), the federal interest concerned, though significant, does not rise to the level of a constitutional right which could well prohibit applicability of such preclusive effect. *In re Selmonosky,* 204 B.R. 820, 825 (Bankr.N.D.Ga.1996), citing *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1985). In fact, the Supreme Court has specifically stated that collateral estoppel or issue preclusion may be applied in reaching conclusions about certain underlying factual issues that are necessary to establish dischargeability in actions commenced under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 658–59, 112 L.Ed.2d 755 (1991).

#### II. *No Exception to "Full Faith and Credit" Statute Applies*

Relying on *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), this Court concludes that no federal policy precludes the application of collateral estoppel to bar dischargeability of the debt at issue here. There is ample evidence that the Debtor was afforded due process in the arbitration proceedings and that the traditional tests for issue preclusion were met in this summary judgment motion. Furthermore, no "special circumstances" exist that would render preclusion inappropriate or unfair in this case. Although the Debtor argues that the Arbitrators misconstrued the Texas statutes on which the Award was based and that he did not make any false representations in connection with the subject trades, the Award speaks for itself; and this Court will not set itself up as an appellate tribunal for the purpose of second-guessing the Arbitrators. Accordingly, this Court will afford "full faith and credit" to the NASD Arbitration Award insofar as it pertains to O'Brien's Section 523(a)(2)(A) claim.

\* \* \* \* \* \*

The record before this Court does not support the granting of summary judgment based on issue preclusion with respect to O'Brien's Section 523(a)(6) nondischargeability claim for "willful and malicious injury". Section 523(a)(6) provides that an individual debtor shall not be discharged from any debt for willful and malicious injury by the debtor to another entity or the property of another entity. 11 U.S.C. § 523(a)(6). The Fifth Circuit, the controlling authority with respect to the NASD Award issued by the Texas Arbitration Panel, has held that a "willful and malicious" act, for nondischargeability purposes, includes (1) a wrongful act intentionally done (i.e., willful); (2) which *necessarily causes harm* and is without just cause or excuse (i.e., malicious). *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir.1986); *In re Chavez,* 140 B.R. 413 (Bankr.W.D.Tex.1992).[6] The Court finds, based on the record before the Court, that O'Brien has not established that the two elements required to be proved in a

---

**6.** To establish "willful and malicious injury" for purposes of dischargeability, the Second Circuit requires (1) an act done deliberately or intentionally, (2) without just cause or excuse. *In re Stelluti,* 94 F.3d 84 (2d Cir.1996). "The definition of willful connotes the desire by a debtor to actually harm the creditor. 'It is the injury to the creditor which must have been intentional— not the action of the debtor which caused the injury.'" *In re Krautheimer,* 210 B.R. 37, 47 (Bankr.S.D.N.Y.1997) (quoting *In re Hartley,* 869 F.2d 394, 395 (8th Cir.), *reh'g denied,* 874 F.2d 1254 (1989)). The Second Circuit has concluded that malice may be constructive or implied. *Stelluti,* 94 F.3d at 88. Implied malice may be demonstrated by the acts and conduct of the debtor in the context of the surrounding circumstances. *Id.*

Section 523(a)(6) action are identical to the elements required to prove violations of any of the Texas statutes upon which the arbitrators based the Award. Specifically, a canvassing of the Award and the statutes upon which it is based does not support a finding that Zangara's unauthorized trading in O'Brien's account *necessarily caused injury* to O'Brien. Arguably, the unauthorized trades could have been profitable. Therefore, the Award cannot be given preclusive effect with respect to O'Brien's § 523(a)(6) claim. However, since this Court finds that O'Brien is entitled to the preclusive effect of the Arbitration Award pursuant to Section 523(a)(2)(A), it is not necessary to fully address this issue.

### CONCLUSION

1. This matter is before the Court pursuant to Fed.R.Civ.P. 56, as made applicable to adversary proceedings by Fed. R. Bankr.P. 7056.

2. The Court finds that the plaintiff has established that preclusive effect should be given to the NASD Arbitration Award in connection with his Section 523(a)(2)(A) cause of action, and that all the elements of his claim have been established. Thus, the Court grants summary judgment in favor of the plaintiff with respect to the said Section 523(a)(A)(2) cause of action.

3. The Court finds that the plaintiff has not established that preclusive effect should be given to the NASD Arbitration Award in connection with his Section 523(a)(6) cause of action.

4. The claim based on the arbitration award is non-dischargeable.

Plaintiff's counsel is directed to settle an Order in accordance with this decision on seven (7) days' notice to all parties having an interest herein.