**In re Joseph M. GUCCIONE,
Sr., Debtor.**

**Arizona Tomato, L.L.C., an Arizona limited liability company and Frank A. Cosentino, Plaintiffs,**

**v.**

**Joseph M. Guccione, Sr., a/k/a Joseph Guccione, Defendant.**

**Bankruptcy No. 800–85189–288(sb).
Adversary No. 800–8440–288(sb).**

United States Bankruptcy Court,
E.D. New York.

Oct. 11, 2001.

Roe, Wallace, Esteve, Taroff & Taitz, LLP, By Marian H. Russo, Esq., Patchogue, NY, for Plaintiffs.

Richard S. Feinsilver, Esq., Carle Place, NY, for Debtor.

## MEMORANDUM AND ORDER

STAN BERNSTEIN, Bankruptcy Judge.

### Background.

These motions come before the Court in an adversary proceeding brought by the plaintiffs, Arizona Tomato, L.L.C. (Tomato) and Frank A. Cosentino (Cosentino) (the plaintiffs) against the debtor, Joseph M. Guccione, Sr. (the debtor), to determine the dischargeability of certain debts owed by the debtor to the plaintiffs. On August 15, 2000, the debtor filed a voluntary petition in bankruptcy for relief under chapter 7. The plaintiffs filed their complaint and the summons issued on November 27, 2000. The debtor's answer followed on December 28, 2000. In the meantime, an Order of Discharge was issued on December 12, 2000.

The complaint seeks a determination that certain debts are nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). Specifically, Count One of the complaint asserts that the debt incurred by the debtor as a result of a ruling in National Association of Securities Dealers (NASD) arbitration proceeding is nondischargeable as a debt for money obtained by fraud within the meaning of section 523(a)(2). The plaintiffs claim that the debtor, as General Securities Principal, President, Director, and founder of his brokerage firm, supervised, facilitated and assisted in material misrepresentations of fact and omissions of material fact made by employees of the firm in connection with cer-

tain investments made by the firm on behalf of the plaintiffs. The plaintiffs assert that the debtor and his employees knowingly misrepresented to the plaintiffs the degree of their experience and skill in investments; that they knowingly made representations of fact and omitted others; that the plaintiffs reasonably relied on these statements; and consequently, the plaintiffs were damaged in an amount to be proved at trial. Complaint, ¶¶ 49–53. Count Two asserts an exception to discharge in that the debt was in connection with fraud while the defendant was acting in a fiduciary capacity within the meaning of section 523(a)(4). The plaintiffs claim that the fiduciary duty owed to them by the debtor was breached with deliberate intent when the debtor facilitated and directly participated in fraud, churning, and other misconduct upon the plaintiffs. Complaint, ¶¶ 55–59. Count Three asserts that the above-stated actions were wrongful and intentional acts, causing harm and financial loss to the plaintiffs, and amount to a willful and a malicious injury within the meaning of section 532(a)(6). Complaint, ¶¶ 61–62. The plaintiffs seek a judgment that the debtor's indebtedness to the plaintiffs is nondischargeable, and that a judgment be entered against the debtor in an amount of not less that $700,000, with costs, interest and attorneys fees, or alternatively, that there be a finding that the two prior judgments, based on the arbitration award and entered in Arizona an New York, are nondischargeable.

The plaintiffs have now brought a motion for summary judgment, filed with this Court on March 30, 2001, in which they argue that the issues relating to section 523(a)(2), (4) and (6) were necessarily determined in the NASD arbitration; that the debtor appeared in the arbitration proceeding by the filing of his answer, and although he chose not to participate further, he had a full and fair opportunity to do so; that the arbitration panel's decision in favor of the plaintiffs was confirmed and entered as a final judgment by the Superior Court of Arizona, and, in turn, entered as a final judgment by the New York State Supreme Court. Consequently, it is the plaintiffs' contention that the debtor is collaterally estopped from relitigating these issues before this Court, and that the debt should be declared to be an exception to discharge under section 523(a)(2), (4) and (6). Affirmation of Marian H. Russo (March 19, 2001) (Russo Affirmation in Support), ¶¶ 23–25; Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment (Plaintiffs' Memorandum in Support) at 7–11. The debtor opposes and asserts that neither the arbitration panel's decision, nor its "Disciplinary Referral," contain findings of fact on which to form a basis to deny the discharge of the debt, and that "[a]n award of damages based upon a[n arbitration] complaint of negligence, breach of contract and failure to supervise does not give rise to a nondischargeability claim under Section 523 of the Bankruptcy Code." Affirmation in Opposition to Motion for Summary Judgment (April 23, 2001) (Feinsilver Affirmation in Opposition), ¶ 13. Furthermore, the debtor argues that the plaintiffs have not produced a sufficient record of the prior arbitration proceeding which indicates whether the issues were previously litigated. *Id.*, ¶¶ 14–22.

The debtor, in turn, has cross-moved for summary judgment dismissing the adversary proceeding, asserting that the plaintiffs are seeking to have trading losses declared nondischargeable; that the plaintiffs sought to have declared nondischargeable these same debts in an adversary proceeding brought in the United States Bankruptcy Court for the Southern District of Florida against two former employees of the debtor; that in its decision

dated November 15, 1999 that court had decided that those debts were fully dischargeable; and that the plaintiffs have not now made allegations that the obligations of the debtor are in any way separate and distinct from those of the former employees. Attorney Affirmation in Support (March 28, 2001) (Feinsilver Affirmation in Support), ¶ 24; Debtor's Memorandum of Law at 2. On this basis, here too collateral estoppel is invoked. The debtor argues that, for the same reasons stated above, no genuine issues of material fact are in dispute, and that "the issue as to whether the Plaintiffs is [*sic*] collaterally estopped from litigating the dischargeability of the Trading Loss Debts is appropriate for summary judgment." Debtor's Memorandum of Law at 2. More specifically, the debtor asserts that the issues litigated in the Florida bankruptcy proceeding were identical to those now before this Court; and that although the defendants in that prior proceeding did not include the debtor, this lack of mutuality of parties does not preclude the application of collateral estoppel because the plaintiffs had a full and fair opportunity to litigate the issues in the prior proceeding, they did not in fact prevail, and federal courts do not require mutuality. Feinsilver Affirmation in Support, ¶¶ 28–30; Debtor's Memorandum of Law at 3–4. The plaintiffs oppose, arguing that the debt at issue is not comprised of "trading losses;" that the arbitration panel made findings of fraud, misrepresentation, breach of fiduciary duty, negligence, as well as violations of the Arizona Securities Law, the NASD rules, and the regulations of the Securities Exchange Commission (SEC); and that the arbitration panel's findings had warranted a Disciplinary Referral. The plaintiffs further argue that these findings are in the nature of nondischargeable debts within the meaning of section 523(a)(2), (4) and (6) of the Bankruptcy Code. Affirma-

tion in Opposition to Debtor's Motion to Dismiss and in Support of Plaintiffs' Motion for Summary Judgment (Russo Affirmation in Opposition), ¶¶ 3–6. The plaintiffs point out that, although the Arizona arbitration decision could not have been given collateral estoppel effect in the Florida bankruptcy proceeding because Arizona law requires mutuality of parties and as yet there had been no final judgment based on the arbitration decision, the Florida bankruptcy court had not discussed the arbitration decision at all. The plaintiffs add that it would be inequitable to allow the debtor to use a later, prior proceeding to neutralize the judgments against them based on the earlier arbitration decision; the plaintiffs' opportunity to litigate in the Florida adversary proceeding had been limited to just two sessions; and they did not choose the Florida forum. Russo Affirmation in Opposition, ¶ 9; Plaintiffs' Memorandum of Law in Opposition to Debtor's Motion to Dismiss and in Support of Plaintiffs' Motion for Summary Judgment (Plaintiffs' Memorandum in Opposition) at 2–3. *See also* Affirmation of Robert D. Mitchell April 19, 2001 (Mitchell Affirmation), ¶¶ 16–18. Furthermore, the plaintiffs state that the Florida bankruptcy court made findings which contradicted the arbitration panel's findings of churning, misrepresentations or false representations, and fraud in a fiduciary capacity, originally made against the debtor and those same persons who later were the defendants in the Florida action; consequently, the decision of the Bankruptcy Court for the Southern District of Florida should not be considered a determination of the claims now made against the debtor. Russo Affirmation in Opposition, ¶¶ 9–14, 16, 28; Plaintiffs' Memorandum in Opposition at 3–4. The plaintiffs add that, as the debt arises from fraud under state law and, therefore, is nondischargeable, and that as the principal of his brokerage firm,

the debtor is neither "an honest but unfortunate debtor," nor an "innocent partner," and consequently, should not be afforded relief under the bankruptcy laws. Plaintiffs' Memorandum in Opposition at 4–5.

### Issues.

The Court is asked to decide whether the debtor should be collaterally estopped from litigating before this Court issues allegedly determined in the prior NASD arbitration proceeding in Arizona, and whether, in turn, the application of nonmutual, defensive collateral estoppel precludes the plaintiffs themselves from litigating before this Court issues, once again, allegedly already determined in the prior adversary proceeding in the United States Bankruptcy Court for the Southern District of Florida.

For the reasons which follow, this Court will not at present make a determination on the merits. Furthermore, findings of fact and conclusions of law are unnecessary at this point, consistent with Fed. R.Civ.P. 52(a), made applicable in this matter through Fed.R.Bankr.P. 7052

### Discussion.

The provisions of the Bankruptcy Code at issue which pertain to exceptions to discharge state in relevant part:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition; . . .

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . .

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . .

11 U.S.C. § 523(a)(2), (4) and (6) (West 2001).

A. Plaintiffs' motion for summary judgment.

█ In determining whether the arbitration decision and judgment in Arizona collaterally estops the debtor from litigating again the issues which relate to dischargeability, the Court must refer to the relevant Arizona law which would give preclusive effect to the decision and judgment, and decide if the required elements have been satisfied. *See In re Zangara,* 217 B.R. 26, 31 (Bankr.E.D.N.Y.1998) ("A prior sate court judgment may bar discharge of the debt evidenced by that judgment if... the law of the state where the judgment was rendered would give preclusive effect to the judgment..."); *In re Krautheimer,* 210 B.R. 37, 50 (Bankr.S.D.N.Y. 1997) ("Therefore, in practice the bankruptcy court must 'refer to the preclusion law of the State in which the judgment was rendered' in order to determine whether collateral estoppel exists" (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985))). The Court of Appeals of Arizona has set this forth as follows:

█ In Arizona, the elements necessary to invoke collateral estoppel are:

(1) the issue was actually litigated in a previous proceeding;

(2) there was a full and fair opportunity to litigate the issue;

(3) resolution of the issue was essential to the decision;

(4) a valid and final decision on the merits was entered; and

(5) there is a common identity of the parties (citations omitted).

*Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 397, 943 P.2d 747, 757 (1996). To satisfy adequately these requirements, "the bankruptcy court has the obligation to carefully examine the record of the state court proceeding." *In re Halperin*, 215 B.R. 321, 336 (Bankr.E.D.N.Y.1997) (citation omitted). *See also In re Krautheimer*, 210 B.R. at 49, 52 (court must satisfy itself by scrutinizing entire record of prior proceeding).

■ The first requirement of identity of issues, not surprisingly, has been couched in various, but ultimately similar, terms in other jurisdictions. *Cf. BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir.1997) (New York requires that " 'the identical issue necessarily must have been decided in the prior action and be decisive of the present action, . .' " (quoting earlier Second Circuit decision)); *Zohlman v. Zoldan*, 226 B.R. 767, 771–72 (S.D.N.Y.1998) ("it is well settled that for collateral estoppel to apply, the issue sought to be precluded must be identical to an issue necessarily decided in the prior action" (footnote omitted) (citation omitted)). In this motion, the plaintiffs, as "[t]he part[ies] invoking collateral estoppel 'bear[ ] the burden of proving the identity of issues...' (citation omitted)." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d at 677. In addition, "the party asserting preclusion 'bears the burden of showing with clarity and certainty what was determined by the prior judgment....' " *Id.* (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir.1992)). *See also In re Zangara*, 217 B.R. at 32 (same). Such an obligation, however, requires that that party provide a record which will indicate " 'the control-

ling facts and pinpoint the exact issues litigated in the prior action.' " *In re Halperin*, 215 B.R. at 336 (quoting *Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 23 (S.D.N.Y.1989)). *See also Zohlman v. Zoldan*, 226 B.R. at 772 (identify precise issues litigated and establish record revealing controlling facts); *In re Landrin*, 173 B.R. 307, 312 n. 5 (Bankr.S.D.N.Y. 1994) (same); *In re Ferruzza*, 107 B.R. 476, 479 (Bankr.S.D.N.Y.1989) (introduce "record sufficient to reveal by clear and convincing evidence" controlling facts and prove specific issues which were litigated).

■■ In this last respect, the plaintiffs have performed unsatisfactorily. They have not shown with clarity and certainty that the issues, as they relate to the exception to discharge provision of the Bankruptcy Code, have been previously determined in the NASD arbitration proceeding because they have not pinpointed those issues in the record with any exactitude, and this simply because they have left it to this Court to establish the record for them. Initially, the plaintiffs submitted Exhibit K with their motion papers (Before the National Association of Securities Dealers: Reporters [*sic*] Transcription of the Testimony of Alan Mandel [compliance officer at the debtor's brokerage firm] (October 26, 1998 and October 27, 1998)), consisting of pages 63–444. In the Plaintiff's Memorandum of Law in Support, only pages 336–337 from Exhibit K are quoted. The passage contains Mandel's testimony in regard to his observations of the debtor's presence at the firm when he thought he had been suspended from trading. Plaintiffs' Memorandum of Law in Support at 15–16. The plaintiffs' Memorandum then cites the Court to pages 123–30 of Exhibit K, which again refers to the debtor's presence at the firm and to Mandel's consternation concerning trading matters while NASD examiners were on site. *Id.* at 16.

Upon the informal request from this Court's chambers, counsel for the plaintiffs submitted the remaining portions of the transcript of the entire NASD arbitration proceeding. This amounts to no less than 1,290 pages. Yet, other than the two fragments from the Mandel testimony, no portion of this voluminous record has been declared by plaintiffs' counsel to be relevant enough to warrant directing this Court's attention to it. In short, the Court interprets the burden "to supply the court with a 'record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action,'" *In re Halperin*, 215 B.R. at 336 (quotation citation omitted), as requiring at least a modicum of effort to direct the Court to those portions of the record which best serve the plaintiffs' argument. The Court most certainly will not engage in a mining expedition, in which it must extract isolated nuggets of testimony of witnesses and findings by the arbitration panel which will then create the plaintiffs' case for them; let the plaintiffs' counsel proceed to pinpoint. *Cf. In re Grimm*, 168 B.R. 102, 112 (Bankr. E.D.Va.1994) ("it is unclear from the record whether the issue of plan feasibility was actually litigated at the confirmation hearing. [The FDIC] *fails to point to any portion of the record* where the parties contested the issue of whether the FDIC suit impeded the prospect of successful reorganization. Consequently, the FDIC has not met *its burden with respect to collateral estoppel*" (footnote omitted) (emphasis added)).

The plaintiff's counsel, in addressing each claim relating to the subsection of section 523, cites much law and attempts to draw analogies with respect to the claims made in the arbitration proceeding. Admirable; but when the plaintiffs' Memorandum of Law in Support states at one point that "[a] claim of fraud was raised in the arbitration proceeding and the record

reveals that the determination of the Arbitration Board against Debtor was based on the fraudulent activities of Greenway/Cortlandt itself and by Debtor as owner and manager," *id.* at 16, this Court can only ask: where? Where does the record reveal this? Surely, when referring to the "record," the plaintiffs mean more than the merely formal statements rendered by the arbitration panel in its decision (Plaintiffs' Exhibit D) and its Disciplinary Referral (Plaintiffs' Exhibit F); and, indeed, more is required.

For these reasons, the plaintiffs' motion for summary judgment is dismissed without prejudice and leave is granted to the plaintiffs to re-file this motion. Should the plaintiffs choose to do so, they and their counsel are strongly urged to offer direct references to specific portions of the record which will indicate the controlling facts and, most important, "pinpoint" the issues determined, as well as offering any analysis and explanations to aid this Court in its determination. This submission must be filed no later than 4:00 p.m., December 30, 2001, with a copy marked "Chambers."

### B. Debtor's motion to dismiss.

The debtor's motion will be held in abeyance for a period of time to allow the plaintiffs adequate opportunity to re-file, or until the Court receives notice from the plaintiffs on their intentions otherwise in this matter.

SO ORDERED.